

DA 07-0617

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 249

BITTERROOTERS FOR PLANNING, PHILLIP TAYLOR,

      Plaintiffs and Appellants,

   v.

THE BOARD OF COUNTY COMMISSIONERS OF
RAVALLI COUNTY, a body politic and political subdivision
of the State of Montana,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-2007-285
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Sarah K. McMillan, Western Environmental Law Center,
Missoula, Montana

      For Appellee:

            Alan F. McCormick, Garlington, Lohn & Robinson, Missoula, Montana

                Submitted on Briefs:  June 4, 2008

                         Decided:  July 15, 2008

Filed:

_____
                       Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 After the Ravalli County Board of Commissioners (Board) approved an agreement resolving federal court litigation between it and numerous subdivision developers (Agreement), the Bitterrooters for Planning and Phillip Taylor (collectively "Bitterrooters") filed suit in the Twenty-First Judicial District Court seeking an injunction enjoining implementation of the Agreement. The District Court denied the Bitterrooters' request for injunction. The Bitterrooters appeal. We affirm.

## ISSUE

¶2 Our restatement of the issue on appeal is:

¶3 Did the District Court manifestly abuse its discretion by denying the Bitterrooters' motion for an injunction?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In the summer and fall of 2006, several developers submitted subdivision applications to Ravalli County for review. In accordance with the Montana Subdivision and Platting Act (MSPA), Title 76, chapter 3, MCA (2005), the County was obligated to notify each applicant within a specified period of time whether its application was "complete," meaning that it contained the necessary information and documentation. The County reviewing agent was then required to review the supporting documentation for adequacy. Upon notification that an application was complete and contained adequate supporting information, the County was required to approve, conditionally approve, or deny the application within sixty days. Section 76-3-604, MCA (2005). The County failed to meet these deadlines. Meanwhile, in November 2006, before these applications

2

were reviewed, Ravalli County voters enacted an emergency interim zoning regulation that limited subdivisions to one home per two acres. Phillip Taylor, an appellant in this case, authored this zoning regulation and he and others, including the Bitterrooters, intended it to apply to these and other development applications awaiting review.

¶5 In January 2007, numerous persons and entities, including several of the above-referenced applicants awaiting review of their applications, filed a federal civil suit in the United States District Court in Missoula, Montana, *Lords v. Ravalli County*, Cause No. CV 07-002-M-DWM. The plaintiffs in the federal action sought compensatory and punitive damages they alleged resulted from the County's failure to meet the deadlines in the MSPA. They complained that had the County acted in accordance with MSPA deadlines, they would not have been subject to the interim zoning regulation adopted in November 2006.

¶6 The County and the federal plaintiffs embarked on settlement negotiations and on May 29, 2007, the County published notice of a public meeting to be held on May 31 to discuss the proposed Agreement between the County and eleven of the fourteen federal plaintiffs. The May 31 meeting was canceled when the County learned the draft of the Agreement was not ready for review. On May 31, notice was published that the public meeting would be held on June 4, 2007. Taylor requested a copy of the proposed settlement agreement on May 31 and again on June 1, 2007, but was told it was unavailable because it was still being drafted.

¶7 The public meeting commenced as scheduled on June 4. Following the closed portion of the meeting in which the Board reviewed the proposed Agreement, the meeting

3

was opened to the public. At that time, the Agreement was made available to the public for the first time. Attorneys for the federal action and the County attorney reported to meeting attendees that the Agreement would resolve the federal action and would eliminate potential liability to the County for damages caused to the federal action plaintiffs. The attorneys also explained the provisions of the Agreement. After the legal presentation, the Board called a recess and encouraged attendees to review the Agreement. Following this recess, the Board opened the floor for questions and comments. Taylor asked questions and submitted comments. A second recess was called and attendees were encouraged to continue reviewing the document. At the conclusion of the second recess, no further comments were offered. Taylor testified that he used both recesses to review the document. He stated that it contained a lot of "legalese."

¶8 The Board concluded the June 4 meeting and announced that the meeting would be reconvened the following morning at 10 a.m. at which time a clean, revised copy of the Agreement would be reconsidered. On the evening of June 4, Taylor reviewed the Agreement further and submitted additional comments to the Board by email. His comments indicated his dissatisfaction with the Agreement. He encouraged the Board to delay settling the federal case for several weeks to give the public more time to review the Agreement and determine whether certain subdivisions under application should be exempt from the interim zoning regulation. He also opined that the "public would rather take the risk of a potential multi million dollar judgment liability [sic] by going to trial and allowing this case to be decided on its merits."

¶9      The second public meeting took place as scheduled on June 5 but no members of the Bitterrooters or the public attended. The Board acknowledged receipt of Taylor's comments sent by email, discussed the Agreement, and then approved it unanimously. The Agreement did not guarantee approval of any of the subdivision applications; it merely required the County to review the applications in accordance with the rules and regulations in effect at the time the applications were initially submitted, before approval of the interim zoning regulation. The signed Settlement Agreement was filed in the federal action on June 6, 2007.

¶10     On June 14, 2007, the Bitterrooters filed an action in the Twenty-First Judicial District Court of Montana against the Board claiming the Board had failed to provide them a reasonable opportunity to examine the Agreement and related documents in advance of the June 4 meeting. They asserted this violated their constitutional rights to know and participate in government, pursuant to Article II, Sections 8 and 9 of the Montana Constitution. They sought to void the Board's approval of the Agreement and to enjoin the Board from implementing the Agreement until the public had the opportunity to review it and comment on it.

¶11     On July 16, 2007, the District Court held a hearing on the Bitterrooters' motion for a preliminary injunction and on August 21, it denied the motion. In September, the Bitterrooters moved for an injunction pending appeal. On October 15, 2007, the District Court summarily denied the motion. The Bitterrooters appealed and on November 21, 2007, this Court remanded the matter to the District Court instructing the court to issue written findings of fact and conclusions of law to support its denial of the requested

5

injunction. On December 3, 2007, the District Court issued a written opinion and order denying the Bitterrooters' motion for an injunction pending appeal. The Bitterrooters then moved this Court for an injunction pending appeal, which we denied. On appeal before us now is the District Court's August 21, 2007 order denying the Bitterrooters' request for a preliminary injunction.

## STANDARD OF REVIEW

¶12 We review the granting or denial of a temporary or permanent injunction under the deferential "manifest abuse of discretion" standard. *St. James Healthcare v. Cole*, 2008 MT 44, ¶ 21, 341 Mont. 368, ¶ 21, 178 P.3d 696, ¶ 21, citing *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. "A manifest abuse of discretion is one that is obvious, evident, or unmistakable." *St. James Healthcare*, ¶ 21. We review a district court's conclusions of law to determine whether its interpretation is correct. *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, ¶ 12, 106 P.3d 1185, ¶ 12 (citation omitted).

## DISCUSSION

¶13 The issue before us is whether the District Court manifestly abused its discretion when it denied the Bitterrooters' motion for a preliminary injunction. It is important to bear in mind that the issue before us is not whether the Bitterrooters were denied a reasonable opportunity to examine the Agreement and related documents, and whether their constitutional rights to know and participate were violated as a consequence. That decision is for another day. Nor are we being asked to determine the propriety of any subdivision approval—that matter may or may not be the basis for a future case at a

6

future time. Our sole function here is to decide whether the District Court abused its discretion when it declined to enjoin the implementation of the Settlement Agreement pending a trial on the merits of the Bitterrooters' claims that they were denied the right to know and participate.

¶14 Section 27-19-201, MCA, provides, in relevant part, for issuance of a preliminary injunction:

(1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
(3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual.

¶15 We have held that only one of these subsections need be met for an injunction to be issued. *Shammel*, ¶ 15. To prevail, the Bitterrooters must make a prima facie case under any one of these statutory provisions or "show that it is at least doubtful whether or not [they] will suffer irreparable injury before [their] rights can be fully litigated. If either showing is made, then courts are inclined to issue the preliminary injunction to preserve the status quo pending trial." *Benefis Healthcare v. Great Falls Clinic*, 2006 MT 254, ¶ 14, 334 Mont. 86, ¶ 14, 146 P.3d 714, ¶ 14 (citation omitted). The Bitterrooters maintain that they have made such a case under § 27-19-201(1) through (3), MCA.

¶16 The District Court addressed each applicable subsection of § 27-19-201, MCA, in its order. The Bitterrooters challenge the following conclusions reached by the District Court:

> In attempting to satisfy § 27-19-201(1) criteria, . . . [the Bitterrooters] acknowledge they and their attorney attended the noticed meeting, received the documents they sought, and provided public comment on June 4, 2007 . . . prior to the Commissioners' final decision on June 5, 2007. [They] have not alleged they were denied information they sought, failed to understand the terms of the proposed Settlement Agreement at the time they presented public comment, participated under a distorted perspective of the facts, or discovered serious flaws or errors in the Settlement Agreement. . . . [The Bitterrooters] have not made a prima facie case that they are likely to succeed on their claims and that they are entitled to the relief demanded to warrant issuance of a preliminary injunction.
>
> In attempting to satisfy the § 27-19-201(2) criteria, [the Bitterrooters] assert implementation of the Settlement Agreement prior to resolution of this action on its merits would cause them great and irreparable injury in that the 11 subdivision applications addressed by the Settlement Agreement will be exempted from the citizen-initiated emergency interim zoning regulation without opportunity for meaningful public comment. [They] contend the emergency interim zoning regulation "was enacted to protect the county . . . against precisely the types of massive and dense developments the settlement agreement allows." It appears [the Bitterrooters'] real argument is that the county would suffer great and irreparable injury by being unprotected from the possibility of approval of subdivisions that do not meet the criteria of the emergency interim zoning regulation. This argument does not comport with the statutory requirement that the *applicant* for the injunction be at risk for irreparable injury. An injunction is improper without evidence demonstrating, beyond mere speculation, that [the Bitterrooters] stand to suffer some injury that would be irremediable by a future award of legal or equitable relief. [The Bitterrooters] have failed to make a sufficient showing that implementation of the Settlement Agreement would cause them great and irreparable injury to warrant issuance of a preliminary injunction. (Emphasis in original, internal citations omitted.)
>
> In attempting to satisfy the § 27-19-201(3) criteria, [the Bitterrooters] assert the implementation of the Settlement Agreement prior

8

to a judgment in [their] favor in this action would render such judgment ineffectual. A judgment that [the Bitterrooters'] constitutional rights to know and participate were violated might be rendered ineffectual if the [c]ourt exercised its discretion to void the approval of the Settlement Agreement and if the Commissioners subsequently voted to reject the Settlement Agreement. However, as the [c]ourt has already noted . . . above, [the Bitterrooters] have failed to make a sufficient showing that they are likely to prevail on the merits to warrant the issuance of a preliminary injunction. Without a sufficient showing that the Commissioners are likely to do some act (i.e. implement the Settlement Agreement) in violation of [the Bitterrooters'] rights, [the Bitterrooters] have failed to make a sufficient showing under § 27-19-201(3) to warrant issuance of a preliminary injunction.

¶17 Summarizing these conclusions, the court stated that the Bitterrooters failed to make a sufficient showing (1) that they were entitled to the relief demanded; (2) that implementation of the approved Settlement Agreement during the pendency of a determination of the ultimate issues in this case would cause them great or irreparable injury; or (3) that implementation of the Settlement Agreement would violate their rights, respecting the subject of the action, and tend to render the judgment ineffectual.

¶18 The Bitterrooters argue that the District Court erred in concluding that they had not demonstrated that they would likely succeed on their claim that the Board had violated their constitutional rights to know and participate. They assert that the court was incorrect in finding that they had not "alleged they were denied information they sought." They maintain that they requested all relevant documents pertaining to the Settlement Agreement. The Bitterrooters point out, as an example of the Board's failure to produce relevant documents, that the Commissioners had discussed the Agreement in e-mails but had not provided the Bitterrooters with copies of those e-mails when asked for all relevant documents. They assert that other un-produced relevant documents may exist

9

but without a copy of the administrative record or complete discovery, they have no way of knowing what the Board has failed to produce. Relying on *Bryan v. District*, 2002 MT 264, 312 Mont. 257, 60 P.3d 381, they also insist that receiving the Agreement "mere minutes before public comment was solicited" further deprived them of their right to participate.

¶19 The Bitterrooters also argue that the District Court erred in finding that they had not alleged that they did not understand the Agreement. They submit that Taylor expressly stated that he "was unable to fully comprehend the settlement agreement and what it purported to do in the limited time allowed for its review during the meeting and before the then-seated Board vote[d] to approve the agreement."

¶20 The Board counters, in part, that the Bitterrooters did not specifically raise their appellate argument vis-à-vis withheld e-mails before the District Court in their earlier substantive pleadings or by way of questioning during the preliminary hearing. It opines, therefore, that we need not address this argument.

¶21 While the record does not appear to contain a substantive argument before the District Court in relation to these e-mails, the Bitterrooters did argue that the Board withheld "relevant documents"; therefore, we will address their claim. In this connection, we note that the e-mails posited as the example of "un-produced relevant documents" were provided to the Bitterrooters at or around the time of the preliminary hearing. While the Board may not have produced them at the time the Bitterrooters originally requested, the Board nonetheless produced them in time for the injunction hearing. Furthermore, there is no evidence that any other relevant documentation

10

pertaining to the Agreement was available but withheld prior to the public meeting. As noted by the District Court, a party cannot be compelled to produce something it does not have.

¶22 As for the timeliness of the availability of the Agreement, we distinguished *Bryan* from the case before us in our order denying the Bitterrooters' motion for an injunction pending appeal. We observed that, in *Bryan*, the plaintiffs alleged that certain documents were available for review several days before the public meeting, but that the school district had denied their requests for those documents. *Bryan*, ¶ 38. They also argued that the documents in question contained serious flaws and errors in the analysis (*Bryan*, ¶ 45), yet the school district used these documents to decide to close the schools in the district. *Bryan*, ¶ 14. The plaintiffs alleged that they would have discovered the serious flaws and errors in the analysis if the school district had provided the documents in a timely manner in response to the plaintiffs' requests. *Bryan*, ¶ 45. The plaintiffs also alleged, and we agreed, that as a result of being denied prior access to the documents in question, the plaintiffs were forced to operate under a distorted perspective at the public meeting. *Bryan*, ¶ 45.

¶23 In contrast to *Bryan*, the Board here provided the Agreement to the Bitterrooters as soon as it was available. Moreover, the Bitterrooters do not argue that the contents of the Agreement were inaccurate or distorted or that they were forced to operate under a distorted perspective at the public meeting. We therefore determined in our earlier order that, under these circumstances, the timing of the availability of the Agreement did not create a prima facie case that the Bitterrooters were entitled to an injunction pending

11

appeal on the grounds of a constitutional violation. Nothing presented on this appeal dissuades us from the accuracy of our earlier determination of this claim.

¶24 Furthermore, the comments submitted by Taylor to the Board on the evening of June 4 belie a claim that he did not understand the contents of the Agreement. He stated in his comments that he had read the Agreement "thoroughly" and he submitted specific comments detailing his dissatisfaction with the contents of the document. He did not, however, suggest revisions to the Agreement nor did he assert or imply that he did not understand the Agreement. Under these circumstances, we conclude the District Court did not manifestly abuse its discretion when it concluded that the Bitterrooters had not made a prima facie case that they were entitled to preliminary injunctive relief based on a denial of their right to know and participate.

¶25 Additionally, the Bitterrooters contend the District Court incorrectly determined that they had not established a risk of irreparable injury particular to themselves as opposed to the community. They first assert that the violation of a fundamental constitutional right is per se an irreparable injury and no further showing of injury is necessary. Notwithstanding this argument, however, they opine, without supporting legal authority, that their particular potential injury is identical to that of the community and their injury is not negated simply because it is shared by the general public. As a result, they claim the District Court abused its discretion by concluding that they had failed to establish that implementation of the Agreement would cause them great and irreparable injury.

¶26    Addressing the Bitterrooters' argument that the violation of a constitutional right is per se an irreparable injury, we note that such a conclusion arises only after a plaintiff has demonstrated probable success on the merits of a claim. *See Foti v. City of Menlo Park*, 146 F.3d 629, 643 (9th Cir. 1998). Having agreed with the District Court's ruling that the Bitterrooters have not affirmatively demonstrated the likelihood of success on the merits, this argument is unpersuasive.

¶27    Turning to the Bitterrooters' claim that they established a risk of irreparable injury particular to Taylor or the Bitterrooters, our review of the relevant pleadings and the injunction hearing transcript reveal no assertions of potential injury specific to the Bitterrooters. No witnesses were called at the injunction hearing to establish the potential for such harm, nor did the Bitterrooters identify such injury in their pleading to the District Court. Conversely, at the injunction hearing, a Board member testified to the direct injury the County would likely have experienced had the Settlement Agreement not been reached. Further, while the Bitterrooters zealously argue potential harm to the County and all of its citizens, including themselves, if these developers are not required to comply with the zoning ordinance, we repeat that the issue of potential subdivision approval was not the basis for this litigation; what was before the District Court in the present litigation was whether the rights to know and participate were violated when the Agreement was approved following a truncated review by the members of the public. The Bitterrooters seek in this case to enjoin implementation of the Agreement, not implementation of any possible future subdivision approval. Therefore, their assertion of potential irreparable injury from the denial of an injunction in this case is what we must

13

assess. Under these circumstances, the District Court did not manifestly abuse its discretion when it concluded that the Bitterrooters had failed to establish a risk of irreparable injury should an injunction not issue in this matter.

¶28 Lastly, the Bitterrooters assert that the District Court abused its discretion in its ruling pertaining to § 27-19-201(3), MCA, and whether a future judgment in the Bitterrooters' favor would be rendered ineffectual by some action taken by the Board in the meantime. While we agree that the District Court's rationale is somewhat confusing, we nonetheless affirm its conclusion. The Bitterrooters argue that the District Court should issue an injunction precluding the Board from implementing the Settlement Agreement until their meritorious claims have been heard in court. They maintain that should they prevail in their claim that the Board violated their constitutional rights to know and participate, then the Settlement Agreement would be voided and the Board would have to provide sufficient time for public participation in the approval of a new agreement. If, however, the Board has already implemented the currently-approved Settlement Agreement, their victory on the constitutional claims would be rendered ineffectual. This argument is flawed for two reasons.

¶29 First, as noted by the District Court, the Bitterrooters have failed to make a prima facie case, at least thus far, that they are likely to prevail on their claims at trial. Second, and more importantly, implementation of the terms of the Settlement Agreement would not render a future judgment in favor of the Bitterrooters ineffectual. As noted above, the terms of the Settlement Agreement simply require that the subdivision applications that were not reviewed in a timely manner now be reviewed under the regulations in effect at

14

the time the applications were originally filed. While the Bitterrooters want the constraints of the interim emergency zoning regulation to be applied to review of these applications, this is not a remedy available to the Bitterrooters in <u>this</u> litigation. Should the Bitterrooters prevail on the merits of the instant claim, the remedy would be to void the Board's approval of the Settlement Agreement and provide greater public participation in evaluating the terms of the Agreement before the Board again votes on it—the remedy would not be to deny developers' applications or to require that the terms of the interim regulation be imposed. *Bryan*, ¶¶ 53-55.

¶30 Finally, we note that the interim zoning regulation adopted by the voters of Ravalli County under § 76-2-206(2), MCA, is set to expire in November 2008 and under the statute no further extensions may be granted. Thereafter, no development applications will be subject to its terms. Even if we were to reach this issue, it would be difficult to conclude that great or irreparable damage will occur now, as the Bitterrooters are presently in the same position they will occupy in and after November 2008.

## CONCLUSION

¶31 Under these circumstances, we conclude the District Court did not manifestly abuse it discretion in denying the Bitterrooters' request for an injunction. Affirmed.

/S/ PATRICIA COTTER

15

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS