FILED

November 3 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0141

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 367

DENNIS THORNTON, DONNA THORNTON, and
MISTY CLIFF II CONDOMINIUMS ASSOCIATION,
and BLOMGREN FAMILY TRUST, BILL B. BLOMGREN
and LARILYN A. BLOMGREN, TRUSTEES, and
MISTY CLIFF I CONDOMINIUMS ASSOCIATION,

_____

JIM ETZLER and BEVERLY ETZLER,

        Plaintiffs and Appellants,

    v.

FLATHEAD COUNTY, a political subdivision, BOARD
OF COUNTY COMMISSIONERS OF FLATHEAD COUNTY,
in its official capacity, CLERK AND RECORDER OF
FLATHEAD COUNTY, in her official capacity, et al.,

        Defendants and Appellees.

_____

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV 07-912A
                     Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Michael A. Ferrington; Attorney at Law, Whitefish, Montana
                (for Jim Etzler and Beverly Etzler)

                James C. Bartlett; Attorney at Law, Kalispell, Montana
                (for Dennis Thornton, Donna Thornton, Misty Cliff II Condominium
                Association, Blomgren Family Trust, Bill B. Blomgren and Larilyn A.
                Blomgren, Trustees, and Misty Cliff I Condominiums Association)

For Appellees:

Alan F. McCormick; Garlington, Lohn & Robinson, Missoula, Montana
(for Flathead County)

Peter A. Steele; Office of the County Attorney, Kalispell, Montana

_____

Submitted on Briefs:  August 12, 2009

Decided:  November 3, 2009

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Jim and Beverly Etzler (Etzlers), Blomgren Family Trust (Blomgrens), and Dennis and Donna Thornton (Thorntons) (collectively Appellants) appeal from an order of the Eleventh Judicial District Court, Flathead County, granting Flathead County's (County) motion for summary judgment. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 Whether Appellants' properties were correctly required to complete subdivision review for their condominium projects.

¶4 Whether the District Court correctly granted summary judgment to Flathead County.

¶5 Whether recording certain condominium documents bars Flathead County's actions under theories of estoppel or waiver.

¶6 Whether the District Court abused its discretion by denying Etzlers' motion to amend their complaint.

## BACKGROUND

¶7 This is a case about condominium exemptions from subdivision review. The District Court consolidated two cases challenging the County's refusal to allow the filing of transfer deeds for condominiums until the projects completed subdivision review. The particular facts presented by Appellants are similar, but addressed separately here.

¶8 On October 19, 2006, Etzlers recorded a declaration and bylaws for a residential condominium project containing 31 buildings and 124 condominium units on real

3

property near Lakeside. The Clerk and Recorder's Office accepted the documents for recording. Etzlers previously obtained subdivision approval on the same real property for a five-lot subdivision (plus one remainder lot) for single-family dwellings. The original subdivision approval did not contemplate construction of condominiums. The real property comprising the proposed Osprey Ridge condominium project is located in the County's Scenic Corridor Zoning District.

¶9 On August 1, 2006, Blomgrens recorded a declaration of residential condominiums and related documents with the Flathead County Clerk and Recorder for a residential condominium project containing four buildings and 105 condominium units. The Clerk and Recorder's Office accepted the documents for recording. The real property comprising the proposed Misty Cliff I condominium project is not within any zoning district and the project has not been constructed. The parcel for the condominium project was created prior to enactment of the Montana Subdivision and Platting Act of 1973 (Subdivision Act).

¶10 On July 25, 2006, Thorntons recorded a declaration of residential condominiums and related documents with the Flathead County Clerk and Recorder for a residential condominium project containing 17 buildings and 385 condominium units. The Clerk and Recorder's Office accepted the documents for recording. The real property comprising the proposed Misty Cliff II condominium project is not within any zoning district and the project has not been constructed. The parcel for the condominium project was created prior to enactment of the Subdivision Act.

4

¶11 When the County learned that Appellants recorded the documents purporting to create condominium projects without subdivision review, the County informed the Clerk and Recorder's Office not to accept deeds for the condominium developments and posted a reminder notice in order to prevent construction of the projects and transfers of any condominium units until Appellants obtained subdivision approval in accordance with the Subdivision Act. Appellants sued. The District Court granted summary judgment to the County on January 14, 2009. Appellants appeal from that order.

## STANDARD OF REVIEW

¶12 This Court reviews a district court's conclusions of law to determine whether its interpretation is correct. *Bitterrooters for Planning v. Bd. of Co. Commrs. of Ravalli Co.*, 2008 MT 249, ¶ 12, 344 Mont. 529, 189 P.3d 624.

¶13 This Court reviews summary judgment rulings de novo, applying the same criteria as the district court based on M. R. Civ. P. 56. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 12, 344 Mont. 540, 189 P.3d 615. Thus, the moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Peterson*, ¶ 12. The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences are to be drawn in favor of the party opposing summary judgment. *Peterson*, ¶ 12. "Once the moving party has met its burden, the party opposing summary judgment must present substantial evidence, as opposed to mere denial, speculation, or conclusory statements, raising a genuine issue of material fact."

*Peterson*, ¶ 13. The determination that the moving party is or is not entitled to judgment as a matter of law is a legal conclusion, which we review for correctness. *Peterson*, ¶ 13.

¶14 This Court reviews a district court's denial of a motion to amend pleadings to determine if the district court abused its discretion. *Peuse v. Malkuch*, 275 Mont. 221, 226, 911 P.2d 1153, 1156 (1996). Pursuant to M. R. Civ. P. 15(a), a party may amend its pleading by leave of court and leave shall be freely given when justice so requires. An opportunity to amend a pleading is not appropriate, however, when the party opposing the amendment would incur substantial prejudice as a result of the amendment. *Peuse*, 275 Mont. at 227, 911 P.2d at 1156.

## DISCUSSION

¶15 *Whether Appellants' properties were correctly required to complete subdivision review for their condominium projects.*

¶16 This issue turns on the interpretation of a statutory exemption from subdivision review for certain condominiums. The Subdivision Act defines condominiums as subdivisions:

> "Subdivision" means a division of land or land so divided that it creates one or more parcels containing less than 160 acres that cannot be described as a one-quarter aliquot part of a United States government section, exclusive of public roadways, in order that the title to or possession of the parcels may be sold, rented, leased, or otherwise conveyed and includes any resubdivision *and further includes a condominium* or area, regardless of its size, that provides or will provide multiple space for recreational camping vehicles or mobile homes.

Section 76-3-103(15), MCA (emphasis added). However, the Subdivision Act also exempts certain condominiums from subdivision review:

6

> **Exemption for certain condominiums.** Condominiums constructed on land divided in compliance with this chapter are exempt from the provisions of this chapter if:
>
> (1) the approval of the original division of land expressly contemplated the construction of the condominiums and any applicable park dedication requirements in 76-3-621 are complied with; or
>
> (2) the condominium proposal is in conformance with applicable local zoning regulations where local zoning regulations are in effect.

Section 76-3-203, MCA (2005). Thus, a condominium project is exempt from subdivision review if it meets two prerequisites. First, the condominium project must be constructed on "land divided in compliance with this chapter." Second, the condominium project must be either: (1) expressly contemplated at the time of the original approval (i.e. subdivision approval); or (2) in conformance with applicable local zoning regulations where local zoning regulations are in effect. Section 76-3-203, MCA (2005).

## Etzlers

¶17 The Osprey Ridge condominium project fulfills the first prerequisite of § 76-3-203, MCA (2005), because Etzlers obtained approval in 2005 to subdivide the property into five single-family dwellings in accordance with the Subdivision Act. Etzlers rely on their interpretation of § 76-3-203(2), MCA (2005), as providing them an exemption from subdivision review.

¶18 Etzlers argue that the Osprey Ridge condominium project is exempt from additional subdivision review because the property is located within the Scenic Corridor Zoning District. Flathead County Zoning Regulations (Zoning Regulations) define the Scenic Corridor as:

7

An overlay or standing district intended to protect the scenic vistas and provide greater traffic safety along the highway corridors by restricting the number, size and location of outdoor advertising signs and billboards. This district can function as a standing district or can be applied to zoned areas. If zoned, this district will only regulate off-premise advertising signs.

No other land use restrictions apply in this district other than those relating to signs.

Section 3.32.010. The Zoning Regulations only regulate signs and cellular towers within the Scenic Corridor Zoning District. Etzlers interpret the provision that "[n]o other land use restrictions apply in this district other than those relating to signs" as inferring that condominiums are permitted in the Scenic Corridor, since the Scenic Corridor only regulates signs and cellular towers. Etzlers claim that the Osprey Ridge condominium project is exempt from subdivision review, because, pursuant to § 76-3-203(2), MCA (2005), the project is "in conformance with applicable local zoning regulations where local zoning regulations are in effect." In other words, Etzlers argue that the Osprey Ridge condominium project complies with the only land-use restrictions for the Scenic Corridor Zoning District, therefore the project conforms with applicable local zoning regulations and qualifies for an exemption from subdivision review.

¶19   Etzlers misconstrue the Scenic Corridor Zoning District's application to § 76-3-203(2), MCA (2005). This Court has held that the exemption provisions of the Subdivision Act are to be narrowly interpreted. *Shults v. Liberty Cove, Inc.*, 2006 MT 247, ¶ 17, 334 Mont. 70, 146 P.3d 710. The Scenic Corridor Zoning District only applies to signs and cellular towers. The Scenic Corridor Zoning Regulations do not address appropriate land uses or densities, and do not contemplate or regulate development of

8

condominiums. Etzlers strain logic by interpreting the Scenic Corridor's provision that "[n]o other land use restrictions apply in this district other than those relating to signs" to infer that condominiums are permitted in the Scenic Corridor. This provision merely limits application of the Scenic Corridor Zoning District to signage. Etzlers' attempt to read into this provision any inferred permission for condominium development misconstrues the plain language of the regulation.

¶20    Furthermore, the legislative history of § 76-3-203(2), MCA (2005), clarifies that the Legislature never intended for an absence of zoning regulating condominiums to create an exemption from subdivision review. As the District Court reasoned:

> The legislative history of Section 76-3-203, M.C.A., makes the intent of the exemption provisions clear. The amendment was intended to address situations involving lands already subject to zoning regulations. Where a local government has completed the public, legislative process to determine appropriate land uses for an area, the subsequent construction of condominiums in conformance with those zoning regulations should not require subdivision review. However, where zoning has not been enacted, condominium projects should undergo subdivision review because the local government has not yet had an opportunity to determine whether the property is suitable for any particular land use or for the condominium project such as in the case at bar.

See Mont. Sen. Comm. on Loc. Govt., *HB 589*, 57th Leg., Reg. Sess. 7-8 (Mar. 27, 2001). Clearly the exemption provided in § 76-3-203(2), MCA (2005), contemplates application to local zoning regulations that address condominium development. The Scenic Corridor Zoning District does not address condominium development, and is therefore not applicable to the exemption in § 76-3-203(2), MCA (2005). Thus, the District Court correctly concluded that the Etzlers' condominium project fails to meet the

9

prerequisites for an exemption from subdivision review under § 76-3-203, MCA (2005), and Etzlers were correctly required to complete subdivision review.

**Thorntons/Blomgrens**

¶21 Thorntons and Blomgrens argue that their real properties have never been subject to the Subdivision Act because their parcels were created prior to enactment of the Subdivision Act in 1973. They contend that the Subdivision Act does not affect their pre-1973 "tract land," therefore they receive a "wholesale blanket exemption" from subdivision review and are free to construct condominium developments without government intervention.

¶22 Thorntons and Blomgrens base this argument on a tortured interpretation of § 76-3-103(15), MCA, which defines a subdivision to include "a condominium *or* area, regardless of its size, that provides or will provide multiple space for recreational camping vehicles or mobile homes." (Emphasis added.) Thorntons and Blomgrens suggest that the "or" in this statutory language equates condominiums to areas for recreational camping vehicles or mobile homes, and then argue that this language does not comport with the common definition of condominium as used in the Flathead County Zoning Regulations: "[o]wnership in common with others of a parcel of land and certain parts of a building together with individual ownership in fee of a particular unit or apartment in such building." Section 7.04.150. We decline to accept this strawman interpretation of the definition of subdivision, and instead give "or" its common disjunctive meaning, understanding that the Subdivision Act defines subdivisions to

include a "condominium," as well as an "area, regardless of its size, that provides or will provide multiple space for recreational camping vehicles or mobile homes." Section 76-3-103(15), MCA. The inclusion of condominiums as subdivisions subject to the Subdivision Act was implicit in our discussion in *Shults*, which addressed whether a condominium project similar to those here met the requirements for an exemption from subdivision review under § 76-3-203, MCA (2005). *Shults*, ¶¶ 7, 13-23. We conclude that no "wholesale blanket exemption" from subdivision review exists for pre-1973 "tract land," thus Thorntons and Blomgrens must complete subdivision review for their condominium projects unless they fulfill the requirements for an exemption under § 76-3-203, MCA (2005).

¶23 Thorntons and Blomgrens do not meet the prerequisites for an exemption from subdivision review under § 76-3-203, MCA (2005). Thorntons and Blomgrens acknowledge that their properties were created prior to enactment of the Subdivision Act. Thus, since their proposed condominium projects will not be built on "land divided in compliance" with the Act, their projects fail to meet the first prerequisite for an exemption from subdivision review under § 76-3-203, MCA (2005). This conclusion is sufficient to determine that their condominium projects are not exempt from subdivision review under § 76-3-203, MCA (2005). However, since they argue that Flathead County has established county-wide zoning, and assert that their parcels are located in the County's "unzoned" district not subject to any regulations preventing construction of condominiums, we address this issue as well.

11

¶24 In 1993, Flathead County adopted zoning regulations pursuant to Title 76, Chapter 2, Part 2, MCA. The Zoning Regulations specifically provide that "[t]hese regulations may be applied throughout the County, regardless of planning jurisdictions, wherever a County zoning district is created." Section 1.04.040. Thus, zoning is only applied to those zoning districts created by the County. The Zoning Regulations establish specific use districts "[f]or the purpose of applying these regulations to the zoned areas of Flathead County. . . ." Section 3.01.020. Once again, zoning is applied exclusively to zoned areas of the County. These zoning provisions clarify that Flathead County has not adopted county-wide zoning, but rather has adopted zoning regulations for specific zoning districts. Furthermore, the Zoning Regulations do not include an "unzoned" district in the list of zoning districts, which includes typical zoning uses such as agricultural, residential, business, commercial, industrial, and others. Section 3.01.020. The District Court correctly noted that "the County has presented uncontradicted evidence and argument that Flathead County has *not* established County-wide zoning and only those parcels that are within one of the County's established zoning districts are subject to zoning regulations. There is no zoning district designated as 'unzoned'." Because there are no local zoning regulations in effect for the area where the Misty Cliff I and II condominium projects are proposed, Thorntons and Blomgrens do not meet the second prerequisite for an exemption from subdivision review under § 76-3-203(2), MCA (2005). The District Court correctly concluded that Thorntons' and Blomgrens' condominium projects fail to meet the prerequisites for an exemption from subdivision

12

review under § 76-3-203, MCA (2005), and they were correctly required to complete subdivision review for their condominium projects.

¶25 Appellants devote much attention to their perceived deprivation of property rights. To clarify our holding in this respect, Appellants are not deprived of their potential to develop condominiums on their property, they are merely denied an exemption from subdivision review under § 76-3-203, MCA (2005). Appellants may still pursue their condominium projects by completing subdivision review as required by law.

¶26 *Whether the District Court correctly granted summary judgment to Flathead County.*

¶27 Etzlers attempt to raise various issues of disputed facts to challenge the District Court's summary judgment ruling. Etzlers claim that an affidavit of County Planning Director Jeff Harris (Harris) fails to state that it is based on personal knowledge. Etzlers thus attempt to elevate their affidavits as the only proper consideration, even suggesting that their interpretations of the law become the undisputed facts for purposes of summary judgment. Etzlers further attempt to create disputes of material fact under § 76-3-203(1), MCA (2005), regarding whether condominiums were expressly contemplated when the real property was subdivided in 2005.

¶28 Etzlers' arguments are unpersuasive. The factual disputes that Etzlers describe are not material to the dispositive issue regarding the application of § 76-3-203, MCA (2005). This Court has repeatedly held that "the party opposing summary judgment must present substantial evidence, as opposed to mere denial, speculation, or conclusory

13

statements, raising a genuine issue of material fact." *Peterson*, ¶ 13. Etzlers' arguments amount to nothing more than denial, speculation, and conclusory statements pertaining to immaterial facts. For example, Etzlers' affidavit includes a vague statement that "when we submitted our prior application for Osprey Ridge Minor Subdivision and when we received our preliminary plat approval, the concept of multi-family use such as townhomes or condominiums was in fact contemplated," yet the affidavit fails to support this statement with any documentation that counters the submitted matters of record. Similarly, Etzlers attempt to contradict Harris' statements that the Scenic Corridor District is merely for sign regulation by mischaracterizing the District as "clearly identified as a separate 'free standing' zoning district." The plain language of the regulation defines the Scenic Corridor District as an "overlay or standing district," and adds that "[t]his district can function as a standing district or can be applied to zoned areas. If zoned, this district will only regulate off-premise advertising signs." Section 3.32.010. This provision clarifies that a zoned area may still be designated a Scenic Corridor District, although such designation functions as an overlay district to regulate signage, while other uses continue to be regulated by whatever zoning was already in place for the area. The provision can be interpreted by a plain reading of the regulation and no suggested dispute of material fact is relevant.

¶29 More importantly, Etzlers' affidavits are not relevant to the material facts at issue. All applicable statutes, including the entire text of the Zoning Regulations with sections providing for the Scenic Corridor District, were presented to the District Court, which

14

reached its own conclusions regarding their effect on the condominium projects without citation to the affidavits. Removing all affidavits from consideration does not change the fact that all undisputed material facts necessary for resolution of this case were before the District Court.

¶30 Thorntons and Blomgrens raise the issue of whether the District Court erred in granting summary judgment to the County, but fail to develop any clear argument to address the issue. This Court's Rules of Appellate Procedure provide that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on. . . ." M. R. App. P. 12(1)(f). The closest that Thorntons and Blomgrens come to developing their argument is to blame the County for incomplete discovery that contributed to their absence of a cross-motion for summary judgment. However, as noted above, the District Court had all undisputed material facts necessary for resolution of the case before it when it granted summary judgment to the County.

¶31 We conclude that the District Court correctly granted summary judgment to the County.

¶32 *Whether recording certain condominium documents bars Flathead County's actions under theories of estoppel or waiver.*

¶33 Etzlers challenge the District Court's conclusion that Montana law is clear that the recording of a document does not establish the document's validity. Etzlers maintain that they relied upon the approval and recordation by the County. However, Etzlers fail to

15

cite any authority for their contention that the County reviewed and approved their declaration prior to recordation. In fact, the only approval the Etzlers obtained was from the Montana Department of Revenue. The Department of Revenue lacks discretion to deny approval of a condominium declaration if the name of the project is unique and the landowner has paid all taxes and assessments due. Section 70-23-304, MCA. However, the Department has no authority to determine whether a condominium project is exempt from subdivision review. Only the local governing body has authority to determine whether a division of land is exempt from subdivision review.

¶34 Montana law provides that the act of recording a document, such as a deed or a condominium declaration, does not establish the document's validity simply because the clerk and recorder's office accepted and recorded it. For example, this Court held that void one-party deeds could not legitimately transfer property simply because they were accepted and filed with the clerk and recorder's office. *Elk Park Ranch, Inc. v. Park Co.*, 282 Mont. 154, 164, 935 P.2d 1131, 1136-37 (1997). "The Landowners cannot seriously argue that the void one-party deeds somehow serve to accomplish a legitimate property transfer simply because the void deeds were accepted and filed with the clerk and recorder's office. The recording of a deed does not establish the deed's validity." *Elk Park Ranch*, 282 Mont. at 164, 935 P.2d at 1136-37.

¶35 Equitable estoppel does not apply here. "Equitable estoppel, by its terms, requires the misrepresentation of a material fact." *Elk Park Ranch*, 282 Mont. at 166, 935 P.2d at 1138. Etzlers do not allege the County made any express representations that the

condominium projects were entitled to an exemption from subdivision review. The County's only representation to Etzlers was that the condominium projects would require subdivision review. The mere recording of the condominium declarations is not a representation of any kind. Thus, equitable estoppel does not apply here, since Etzlers have not demonstrated that the County made any misrepresentation of a material fact.

¶36    Etzlers' waiver argument is similarly unpersuasive. Etzlers fail to point to any authority that would permit the County to waive a requirement of state law or its own local regulations. The County correctly interpreted § 76-3-203, MCA (2005), and found that the Etzlers' condominium development must complete subdivision review and approval in accordance with the Subdivision Act and County Subdivision Regulations. The County cannot waive these requirements; they are mandatory minimum provisions of state law that the County cannot ignore. *Burnt Fork Citizens Coalition v. Bd. of Co. Commrs. of Ravalli Co.*, 287 Mont. 43, 49, 951 P.2d 1020, 1024 (1997) ("the Act establishes minimum requirements that local governing bodies must follow").

¶37    *Whether the District Court abused its discretion by denying Etzlers' motion to amend their complaint.*

¶38    After the County's motion for summary judgment was fully briefed, but before the time for oral argument, Etzlers filed a motion to amend their complaint to add a claim for equal protection violations. Etzlers argued that other condominium projects have been approved that did not meet any statutory exemptions, therefore the County impermissibly applied restrictions to Etzlers. The District Court denied Etzlers' motion to amend, citing

*Peuse v. Malkuch* for the proposition that the court should not allow amended pleadings or a change in legal theories after a dispositive motion for summary judgment has been fully briefed. On appeal, Etzlers maintain that "newly discovered evidence" found during the course of litigation has always been recognized as a reasonable basis for a motion to amend, citing *Hobble-Diamond Cattle Co. v. Triangle Irr. Co.*, 249 Mont. 322, 815 P.2d 1153 (1991).

¶39 Etzlers fail to adequately present any "newly discovered evidence" to support their claim. Etzlers mentioned the alleged discrimination in their brief opposing the County's summary judgment motion. The supporting evidence for this claim is limited to an affidavit with a list of condominium projects allegedly approved through recordation without subdivision or other approval from the County. As the County notes, this list fails to provide dates, legal descriptions, or condominium declarations for these projects sufficient to determine what statutes or local regulations may have applied. The list merely includes condominium projects created in unzoned areas or within the Scenic Corridor District. Such projects could have been eligible for statutory exemptions from subdivision review, but without further evidence presented to the court, the names of condominium projects alone do not establish any fact proving that the District Court abused its discretion in denying Etzlers' motion to amend. In response to discovery requests, the County directed Appellants to the Clerk and Recorder's Office to access any public documents that could potentially support their contentions. Etzlers cannot now

claim "newly discovered evidence" based on information that remains publicly available, yet was never adequately presented to any court.

¶40 We conclude that the District Court did not abuse its discretion in denying Etzlers' motion to amend their complaint. Etzlers sought to add an equal protection claim to their complaint. This Court has concluded that "[l]itigants should be allowed to change legal theories after a motion for summary judgment has been filed only in extraordinary cases." *Peuse*, 275 Mont. at 228, 911 P.2d at 1157. This is not such an extraordinary case. The "newly discovered evidence" here was never fully developed and was available to Etzlers when they filed their complaint. Allowing Etzlers to add a legal theory after the County filed its motion for summary judgment would unduly prejudice the County.

¶41 For the reasons stated herein, the decisions of the District Court are affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON