DA 10-0102

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 44

GASTON ENGINEERING & SURVEYING, P.C.,

Plaintiff and Appellant,

v.

OAKWOOD PROPERTIES, LLC, and YELLOWSTONE BANK,

Defendants and Appellees.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 07-946AX
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kellie G. Sironi (argued), Attorney at Law, Billings, Montana

For Appellee Yellowstone Bank:

David M. Wagner (argued), Crowley Fleck, PLLP, Bozeman, Montana

For Amicus Montana Bankers Association:

Matthew J. Cuffe, Martin S. King, Worden Thane, P.C., Missoula, Montana

For Amicus American Council of Engineering Companies-Montana:

J. Michael Young, Luinstra & Young, PLLC, Great Falls, Montana

Argued:   January 19, 2011
Submitted:   January 20, 2011
Decided:   March 15, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Plaintiff Gaston Engineering & Surveying, P.C. ("Gaston") appeals from two orders of the Eighteenth Judicial District Court, Gallatin County; the first granting summary judgment to Defendant Yellowstone Bank ("Yellowstone"), and the second denying Gaston's M. R. Civ. P. 59(g) motion. We reverse.

¶2 Defendant Oakwood Properties, LLC[1] ("Oakwood") planned to develop a residential subdivision near Bozeman, Montana. On June 12, 2006, Oakwood entered into a buy-sell agreement to buy the property for the subdivision (the "Property") for $4,500,000. The sale was contingent on Oakwood's acceptance of water monitoring and perc test results. The same day, June 12, 2006, Gaston began work performing the tests.

¶3 Oakwood approached Yellowstone for financing. Yellowstone agreed to finance "up to $6,000,000" to purchase and develop the Property. Oakwood accepted Gaston's test results and on September 20, 2006, Oakwood concluded the purchase of the Property. Yellowstone advanced approximately $4,500,000 for the purchase price of the Property and recorded its Mortgage that same day. That left approximately $1,500,000 available on the "up to $6,000,000" Mortgage. A Warranty Deed was also filed September 20, 2006, making Oakwood the owner of the Property.

¶4 Initially, Gaston sent Oakwood its invoices and Oakwood would send them to Yellowstone requesting advances so Gaston could be paid. Yellowstone approved the

---

[1] Oakwood Properties, LLC is not a party to this appeal. Gaston obtained a stipulated judgment against Oakwood allowing Gaston to proceed with the foreclosure of its construction lien against the

3

advances and they were made from the $1,500,000 available on the Mortgage. Yellowstone modified its Mortgage to include the advances it knew were being used to pay Gaston and to pay for other work on the Property. Eventually, Oakwood stopped paying Gaston for Gaston's work. As a result, Gaston filed a construction lien on the Property, in the amount of approximately $79,000, which was recorded on October 12, 2007.

¶5     Gaston sued Oakwood to foreclose on the construction lien and Yellowstone to establish priority of the construction lien. Gaston filed for summary judgment, arguing that its construction lien had priority over Yellowstone's Mortgage. The District Court denied Gaston's motion and granted summary judgment to Yellowstone, finding Yellowstone's Mortgage was a purchase money mortgage and had priority over Gaston's lien. Additionally, the District Court found that Gaston could not have "commenced work" under the construction lien statutes until September 20, 2006, the date Oakwood actually owned the Property, thus Gaston's lien could not have priority. Gaston then filed a M. R. Civ. P. 59(g) motion to amend the judgment, which was denied. Gaston appeals.

¶6     Gaston states several issues on appeal, restated as follows:

¶7     Issue One: Did the District Court err in finding Gaston's construction lien did not attach prior to Yellowstone's Mortgage?

¶8     Issue Two: Did the District Court err in finding Yellowstone's Mortgage was a purchase money mortgage, and thus had priority over Gaston's construction lien?

---

Property, subject to ruling on the priority issue.

¶9    Issue Three: Did the District Court err in denying Gaston's M. R. Civ. P. 59(g) motion?

¶10   Because we find the first issue dispositive, we decline to address Gaston's other issues on appeal.

## STANDARD OF REVIEW

¶11   We review summary judgment rulings de novo, applying the same M. R. Civ. P. 56 criteria as the district court. *Thornton v. Flathead County*, 2009 MT 367, ¶ 13, 353 Mont. 252, 220 P.3d 395. The evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences are to be drawn in favor of the non-moving party. *Id*. We review a district court's conclusions of law for correctness. *Id*.

## DISCUSSION

¶12   Gaston argues that its lien attached to the Property on June 12, 2006, the date that it commenced work on the water monitoring and perc tests, regardless of whether Oakwood actually owned the property on that date. Yellowstone argues that Gaston's lien could not have attached on June 12, 2006, because Oakwood did not own the Property until September 20, 2006.

¶13   "A construction lien extends to the interest of the contracting owner in the real estate, as the interest exists at the commencement of work or is thereafter acquired in the real estate." Section 71-3-525(1), MCA (2007); *Swain v. Battershell*, 1999 MT 101, ¶ 25, 294 Mont. 282, 983 P.2d 873. A "contracting owner" is "a person who owns an interest in real estate and who, personally or through an agent, enters into an express or implied contract for

5

the improvement of the real estate." Section 71-3-522(4)(a), MCA (2007). A lien attaches at the "commencement of work," subject to certain exceptions, none of which are applicable here. Section 71-3-535(5), MCA (2007). "Commencement of work" means the "date of the first visible change in the physical condition of the real estate caused by the first person furnishing services or materials pursuant to a particular real estate improvement contract." Section 71-3-522(1), MCA (2007). "A construction lien arising under this part has priority over any other interest, lien, mortgage, or encumbrance that may attach to the . . . real property on which the . . . improvement is located and which is filed after the construction lien attaches." Section 71-3-542(1), MCA (2007).

¶14 Once the statutes' procedural requirements have been met, the statutes will be liberally construed to give effect to their remedial purpose. *Swain*, ¶ 26; *Federal Land Bank of Spokane v. Green*, 108 Mont. 56, 62-63, 90 P.2d 489, 491-92 (1939) (once the statutory requirements have been met, "the lien law is subject to the most liberal construction, for it is remedial in character, and rests upon the broad principle of natural equity and commercial necessity.") There is no indication in the present case that Gaston did not follow proper statutory procedures.

¶15 Liberally interpreting the construction lien statutes, we hold that Gaston's construction lien attached prior to Yellowstone's Mortgage and therefore has priority over the Mortgage. At the time Gaston commenced work, Oakwood was a "contracting owner" for the purposes of § 71-3-522(4)(a), MCA (2007), because Oakwood owned "an interest in real estate" via the buy-sell agreement. *See In re Estate of Wooten*, 198 Mont. 132, 138, 643

P.2d 1196, 1199 (1982) (an enforceable contract for the purchase and sale of real property passes to the purchaser the equitable and beneficial ownership thereof); *Kern v. Robertson*, 92 Mont. 283, 289, 12 P.2d 565, 567 (1932). There is nothing in the text of either §§ 71-3-522(4)(a) or 71-3-525(1), MCA (2007), that states the "interest in real estate" or the "interest of the contracting owner" must be a fee simple interest, or that the "contracting owner" must hold title to the real estate. Rather, there must be some type of ownership interest on the part of the "contracting owner" either at "commencement of work" or "thereafter acquired." Section 71-3-525(1), MCA (2007).

¶16     Oakwood was also a "contracting owner" because once Gaston commenced work, Oakwood "thereafter acquired" an ownership interest in the Property, and remained the owner of the Property at the time the lien was filed. Section 71-3-525(1), MCA (2007). Here, unlike *Swain*, where the party against whom the lien was filed held no interest in the property at the time of filing, Oakwood was undisputedly the owner of the Property when Gaston's lien was filed. The lien attached the day Gaston commenced work – June 12, 2006. Section 71-3-535(5), MCA (2007). While Yellowstone attempts to refute this date, it did not provide any evidence that created a genuine issue of material fact on this issue. In their stipulated judgment, Oakwood and Gaston (the contracting parties) agreed that Gaston commenced work on June 12, 2006. More importantly, Yellowstone knew Gaston began work before it recorded its Mortgage, as evidenced by an email Yellowstone itself produced in discovery. Given this factual record, it cannot be disputed that Gaston commenced work before Yellowstone recorded its Mortgage.

7

¶17 Even a purchase money mortgage is subordinate to a construction lien that attaches before the mortgage is recorded. Section 71-3-542(1), MCA (2007). Yellowstone relies on § 71-3-114, MCA (2007), for its argument that purchase money mortgages have priority over all other liens. That statute, found in the "general provisions" of Title 71, chapter 3 of the MCA, provides "*Except as otherwise provided by law*, a mortgage given for the price of real property at the time of its conveyance has priority over all other liens created against the purchaser, subject to the operation of the recording laws." Section 71-3-114, MCA (2007) (emphasis added). Gaston's lien falls into the exception "otherwise provided by law" as discussed above. The legislature has made clear in § 71-3-542(1), MCA (2007), that a construction lien has priority over a mortgage filed after the construction lien attaches.

¶18 Because Gaston's construction lien attached the day it commenced work, June 12, 2006, it has priority over Yellowstone's Mortgage, which was recorded on September 20, 2006. Section 71-3-542(1), MCA (2007).

## CONCLUSION

¶19 Based upon the foregoing, we reverse the District Court's award of summary judgment to Yellowstone and remand to the District Court for entry of summary judgment for Gaston on the attachment issue.

/S/ MICHAEL E WHEAT

We Concur:

8

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE