JUSTICE WHEAT,
dissenting.
¶25 I disagree with tibe Court’s interpretation of the controlling statute. Therefore, I dissent. Because I believe a genuine issue of material fact existed, I conclude that the District Court erred by granting summary judgment, and would remand for trial on the merits.
¶26 As the District Court correctly noted, this Court has not yet applied or interpreted § 50-16-805, MCA, the statute that controls the matter at bar. Before we can decide whether the District Court *286 correctly determined that there were no genuine issues of material fact, we must first review the District Court’s decision as to what facts are material. This is a question of statutory interpretation, which we review de novo. See Gordon v. Kuzara, 2012 MT 206, ¶¶ 13, 18, 366 Mont. 243, 286 P.3d 895.
¶27 Without explanation, the Court implies that the proper inquiry for determining whether a violation of § 50-16-305, MCA, occurred is whether the health care provider — Schabacker in this case — knowingly assisted a law enforcement agency. This interpretation is not supported by the plain language of the statute.
¶28 Notably, the Court omits § 50-16-805(2), MCA, from its discussion. Instead, it limits its discussion to § 50-16-805(1), MCA. Yet, the meaning of § 50-16-805(1), MCA, is not clear without reference to § 50-16-805(2), MCA. Those sections read:
(1) To the extent provided in 39-71-604 and 50-16-527, a signed claim for workers’ compensation or occupational disease benefits authorizes disclosure to the workers’ compensation insurer, as defined in 39-71-116, by the health care provider.
(2) A health care provider may disclose health care information about an individual for law enforcement purposes if the disclosure is to:
(a) federal, state, or local law enforcement authorities to the extent required by law; or
(b) a law enforcement officer about the general physical condition of a patient being treated in a health care facility It the patient was injured by the possible criminal act of another.
¶29 It is a maxim of statutory interpretation that a general statute will yield to a specific statute. Section 1-2-102, MCA; State v. Plouffe, 2014 MT 183, ¶ 27, 375 Mont. 429, 329 P.3d 1255. Here, § 50-16-805(1), MCA, read with §§ 39-71-604 and 50-16-527, MCA, states a general rule: a health care provider may disclose relevant health care information to the workers’ compensation insurer. Yet, where the disclosure is for more specific “law enforcement purposes” this rule yields to § 50-16-805(2), MCA. In such case, disclosure can only be made to law enforcement authorities or law enforcement officers, and only to the specific extent allowed.
¶30 Thus, the proper inquiry under this statute does not begin and end with whether the health care provider knew that he or she was disclosing information to a law enforcement authority; § 50-16-805(1), MCA, does not provide a safe-harbor for health care providers just because they subjectively believe their disclosures are being made to the workers’ compensation insurer. Rather the inquiry is two-fold. *287 First, a court must determine for what purpose the disclosure of health care information was made. While the health care provider’s knowledge of the identity of the disclosure recipient may be a relevant factor here, it seems unlikely that it will be dispositive in every instance. For most purposes, the provider may properly disclose information to the workers’ compensation insurer. If the disclosure was made for law enforcement purposes, however, the court must make a second inquiry. Namely, it must ensure that the disclosure was to “law enforcement authorities to the extent required by law,” or to “a law enforcement officer about the general physical condition of a patient being treated in a health care facility if the patient was injured by the possible criminal act of another.” Section 50-16-805(2), MCA.
¶31 While the first inquiry may turn on the subjective knowledge or purpose of the health care provider, the second does not. This Court has often stated that if will not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA; Shockley v. Cascade Cnty., 2014 MT 281, ¶ 19, 376 Mont. 493, 336 P.3d 375. Here, the Court effectively omits the language regarding law enforcement purposes and inserts a knowledge requirement into the second part of tire analysis. This is not justified by the language of § 50-16-805, MCA. Nor was such a requirement intended by the Legislature. This becomes clear upon consideration of § 50-16-817, MCA.
¶32 That section provides civil remedies for violation of Title 50, part 16, MCA, and it is the section pursuant to which relief could be granted in the present case. Notably, § 50-16-817(4), MCA, provides that:
If the court determines that there is a violation of this part, the aggrieved person is entitled to recover damages for pecuniary losses sustained as a result of the violation and, in addition, if the violation results from willful or grossly negligent conduct, the aggrieved person may recover not in excess of $5,000, exclusive of any pecuniary loss.
(emphasis added). This statute allows recovery of damages for any violation of Title 50, part 16, MCA, including § 50-16-805, MCA. It does not require any particular knowledge or state of mind. Instead, it allows for enhanced damages when certain states ofmind are shown. See § 1-1-204(5), MCA (defining “willfully”).
¶33 The specific inclusion of enhanced damages for “willful” conduct or “grossly negligent” conduct, further demonstrates that the Legislature specifically excluded the similar, state-of-mind modifier “knowingly” in both § 50-16-817, MCA, and the related §50-16-805,MCA. Compare § 1-1-204(2),MCA(defining“knowingly”), *288 with § 1-1-204(5), MCA (defining “wfilfully”). The Legislature intended to make no distinction between a knowing violation and an unknowing one.
¶34 Thus, the Court errs by making that distinction here. While the difference between the Court’s analysis and the one discussed in this dissent may seem minor, the practical outcome is not. By requiring actual knowledge of disclosure to a law enforcement entity, the Court creates incentives for the health care provider to learn as little as possible about the particular entity to whom he or she is providing information. This further complicates an already complex relationship between the patient, doctor, workers’ compensation insurer, and law enforcement officials. The Court’s interpretation pushes the health care provider, who is already caught between the other parties and must already carefully balance his or her relationships with the patient, insurer, and law enforcement, further away from the patient; it allows the health care provider to become an agent of law enforcement rather than an advocate for his patient, if he or she does so unknowingly. This is not what the Legislature intended.
¶35 Instead, the Legislature stated in § 50-16-801, MCA, that:
[H]ealth care information is personal and sensitive information that if improperly used or released may do significant harm to a patient’s interests in privacy and health care or other interests; [and]
it is in the best interest of the citizens of Montana to have certain requirements, with respect to the use or release of health care information by health care providers, that are more restrictive than or additional to the health care privacy protections of HIPAA.
The two-step analysis required by § 50-16-805, MCA, better protects these legislative goals than the Court’s interpretation. It places the burden of safeguarding a patient’s information and of determining whether its disclosures are legally permissible with the health care provider; depending on the purpose for the disclosure, the health care provider must ensure that it is disclosing information to a permissible paily. As the Legislature intended, this bolsters the doctor-patient relationship and helps to ensure that privileged health care information is protected. For this reason, the analysis discussed above is preferable to the analysis applied by the Court.
¶36 Yet, regardless of whether or where a subjective “knowingly" standard should be applied, I disagree with the Court’s decision that there was no genuine issue of material fact. As the District Court did, *289 this Court relies too heavily on Schabacker’s affidavit and testimony, while giving too little weight to Simms’ arguments and evidence. Simms presented arguments and evidence indicating the following:
• Schabacker was contacted by Thomas Martello, a Special Assistant Attorney General.
• Schabacker was given what he knew to be surveillance footage of Simms.
• Schabacker provided more than health care information to Martello; Schabacker suggested “misrepresentation” on the part of Simms and declared the surveillance tape to be “disturbing” in light of the Schabacker’s testimony and advocacy on Simms’ behalf.
Additionally, Schabacker stated in his affidavit that:
Although my main purpose in writing the letter was to communicate with the Montana State Fund regarding Simms’ condition, I also wanted to make clear that I had not previously known that Mr. Simms had the mobility portrayed in the videos and that I would need to reassess his condition and treatment. I also wanted to state that my prior assistance to Mr. Simms in obtaining benefits was done without any knowledge of his true mobility and that I may have inadvertently assisted him in obtaining benefits he was not entitled to.
¶37 A court considering summary judgment must view the evidence in a light most favorable to the non-moving party, and all reasonable inferences are to be drawn in favor of the party opposing summary judgment. Thornton v. Flathead Cnty., 2009 MT 367, ¶ 13, 353 Mont. 252, 220 P.3d 395. Drawing such inferences, the foregoing evidence may reasonably establish that Schabacker knew he was disclosing health care information to a special assistant attorney general; that Schabacker understood the surveillance nature of the videos he was supplied with; and that the character of Schabacker’s communication was defensive of Schabacker’s own role and accusatory toward Simms. Accordingly, a trier of fact might reasonably have found that Schabacker knew he was disclosing health care information to a law enforcement agency or for law enforcement purposes.
¶38 Yet, the District Court gave credence to Schabacker’s self-serving assertion that he did not know that Martello was a special assistant attorney general or involved with a criminal investigation at the time Schabacker wrote his letter. Viewed in the light most favorable to Simms, this statement at most establishes that Schabacker did not know Martello’s identity when he was writing the letter. Given that *290 over a month passed between the times when the letter was written and when it was sent, this says nothing of Schabacker’s knowledge at the time the health care information disclosure actually occurred. For these reasons, there was a genuine issue of material fact, and the District Court should not have granted summary judgment.
¶39 The Court contends that the foregoing is of little consequence given the disclosure permissions granted in the Notice of Privacy Policy. Yet, the Court ignores the limitations built into what it interprets as the document’s unequivocal permission for the health care provider to disclose health care information to the workers’ compensation insurer. See Opinion, ¶ 18. While the Notice of Privacy Policy does, as the Court states, allow NRPRC to "disclose any information [it] collect[s],” NRPRC is only allowed to do so "when permitted orrequired by law.” Given the foregoing discussion, whether the disclosure in this case was permitted by law turns on whether Schabacker made the disclosure for a law enforcement purpose or, under the Court’s analysis, knowingly to a law enforcement agent. In either case, there is a genuine issue of material fact and the Notice of Privacy Policy does not make summary judgment proper.
¶40 I believe this Court’s interpretation of § 50-16-805, MCA, was erroneous. Forthisreason,IcannotjointheCourt’sOpinion. I dissent because under the proper § 50-16-805, MCA, analysis and the one applied by this Court, there was a genuine issue of material fact. I would reverse and remand to the District Court for this reason.