JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Randall Simms appeals the Thirteenth Judicial District Court’s grant of summary judgment to Dr. Michael Schabacker. Schabacker was Simms’ workers’ compensation doctor from 2004 through 2007 following Simms’ 1999 work-related accident. Simms sued Schabacker and St. Vincent Healthcare, Schabacker’s employer, alleging Schabacker had disclosed private, confidential healthcare information about him to a law enforcement officer without Simms’ permission. The District Court concluded that Schabacker’s letter was authorized by applicable Montana law and that Schabacker did not knowingly assist law enforcement. The court granted Schabacker’s motion for summary judgment. Simms appeals. We affirm.
ISSUE
¶2 A restatement of the issue on appeal is whether the District Court erred in concluding that Schabacker did not knowingly assist law enforcement and that Montana law authorized Schabacker’s letter to Montana State Fund addressing Simms’ medical condition.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Randall Simms has been before this Court on two previous occasions relating to his 1999 workers’ compensation injury — Simms v. State Comp. Ins. Fund, 2005 MT 175, 327 Mont. 511, 116 P.3d 773 (Simms I) and Mont. State Fund v. Simms, 2012 MT 22, 364 Mont. 14, 270 P.3d 64 (Simms II). Detailed background facts are included in both Simms I and Simms II. Here, we outline only those facts necessary to place this appeal in context.
¶4 In the previous cases it was established that Simms was injured while on the job in 1999. The State Fund accepted liability for his injury claim. Simms subsequently became totally disabled and has been receiving total disability benefits since 2006. Schabacker has treated Simms since October 2004, and his testimony before the Workers’ Compensation Court led to the settlement which provided *280 Simms with permanent total disability and domiciliary care benefits. On April 12,2006, St. Vincent’s Northern Rockies Pain Rehabilitation Center (NRPRC) presented Simms with a “Notice of Privacy Policy” which Simms signed. This Notice informed Simms that NRPRC “may share [Simms’ healthcare] information with your insurance companies” and “may disclose any information we collect when permitted or required by law. This may include but is not limited to, disclosures related to a court subpoena or similar legal requests, fraud investigations and an audit or security examination.”
¶5 The origin of this case — Simms III- — is a letter from State Fund attorney Thomas Martello to Schabacker dated June 20, 2007. The letter was written on Montana State Fund letterhead, indicated that Martello was legal counsel for State Fund, and enclosed a “compilation video” showing Simms engaged in various daily activities. The first video was recorded in 2002; the following ten videos were recorded between September 27,2006, and May 1,2007. The 2006/2007 videos showed Simms walking, shopping, lifting, and loading groceries without using assistive devices such as his walker or wheelchair. He was recorded entering, exiting, and driving a pickup truck without assistance or apparent difficulty. However, the videos recording Simms and his wife entering Schabackeris office buildingfor scheduled visits show Simms walking slowly and with apparent difficulty while using a four-wheeled walker. Martello asked Schabacker to review the recordings and provide his medical observations and comments given the disparity between Simms’ diagnosis and prognosis (permanent total disability) and his functionality as seen in the videos. Simms’ attorney was copied on the letter to Schabacker.
¶6 Schabacker dictated a response to Martello’s letter on June 28, 2007, but did not send the letter to Martello at that time. On July 2, 2007, Martello forwarded a letter to Schabacker that Martello had received from Simms’ attorney. Again, Martello’s letter was on Montana State Fund letterhead, but noted under Martello’s signature that Martello was both legal counsel for the State Fund and special assistant attorney general (SAAG).
¶7 On August 17, 2007, Schabacker faxed his June 28 letter to Martello. In the letter Schabacker noted that “there is an overwhelming disparity between what is present in the video and what I have been left to believe is his functional status,” and that Simms’ “physical capabilities markedly exceed those he reported and demonstrated to me in clinic.” The doctor stated that, based upon the videos, it appeared that Simms had “nearly unrestricted physical capabilities in terms of lifting, carrying, walking, sitting, tossing and *281 driving” and was no longer incapable of gainful employment. Schabacker stated he was disturbed by the videos. He indicated that Martello could contact him if Martello had questions or concerns about the contents of the letter.
¶8 Martello distributed Schabacker’s letter to other persons and entities that had formerly provided medical treatment or insurance coverage to Simms. Based upon the letter, State Fund and these parties sued Simms for fraud. These cases were ultimately dismissed and State Fund continues to pay workers’ compensation benefits to Simms.
¶9 On July 28, 2010, Simms filed a complaint against Schabacker and St. Vincent Healthcare alleging that Schabacker had unlawfully disseminated Simms’ private medical information to a law enforcement officer. The District Court resolved various issues as the litigation proceeded until Schabacker remained as the sole defendant and the single remaining issue was whether Schabacker’s letter to Montana State Fund regarding Simms’ abilities as displayed in the videos violated Simms’ right to healthcare privacy as provided by § 50-16-801, et seq., MCA. In September 2013, both parties filed motions for summary judgment. The District Court held oral argument on these motions on October 7,2013, and on October 30 rendered its order and decision.
¶10 The court addressed the importance of the physician-patient privilege but concluded that the disclosure statutes applicable to workers’ compensation cases authorized Schabacker to have ex parte communications with Montana State Fund pertaining to Simms’ relevant healthcare, and thus provided an exception to the physician-patient privilege. The court noted that State Fund and Schabacker had a history of ex parte communications regarding Simms’ case as authorized by statute, and that this letter was in keeping with past correspondences. The court also concluded that Schabacker did not knowingly assist a law enforcement agency when he discussed Simms’ medical condition with State Fund. Consequently, the District Court granted Schabacker’s motion for summary judgment and denied Simms’ motion.
¶11 Simms filed a timely appeal.
STANDARD OF REVIEW
¶12 We review a district court’s ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any *282 affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” M. R. Civ. P. 56(c)(3); Baumgart v. State, 2014 MT 194, ¶ 13, 376 Mont. 1, 332 P.3d 225 (citations omitted).
¶13 In response to a motion for summary judgment, the non-moving paiiy must provide material and substantial evidence setting forth specific facts to raise a genuine issue of material fact, and cannot merely rely upon speculative or conclusory statements. Baumgart, ¶ 14 (citations omitted).
DISCUSSION
¶14 Did the District Court err in concluding that Schabacker did not knowingly assist law enforcement and that Montana law authorized Schabackefs letter to Montana State Fund addressing Simms’ medical condition?
¶15 The District Court concluded that the workers’ compensation statutory scheme provides exceptions to the physician-patient confidentiality privilege by allowing ex parte communications between a claimant’s physician and the workers’ compensation insurer. The court concluded that Schahacker’s communications with State Fund relative to Simms’ medical condition, including the subject letter to Martello, were authorized under Sections 50-16-805(1), 50-16-527, and 39-71-604(2), MCA. The relevant portions of these statutes are set forth below:
50-16-805Disclosure of information allowed for certain purposes. (1) To the extent provided in 39-71-604 and 50-16-527, a signed claim for workers’ compensation or occupational disease benefits authorizes disclosure to the workers’ compensation insurer, as defined in 39-71-116, by the health care provider.
50-16-527 Patient authorization — retention—effective period— exception — communication without prior notice for workers’ compensation purposes.
(4) Notwithstanding subsections (2) and (3), a signed claim for workers’ compensation or occupational disease benefits authorizes disclosure to the workers’ compensation insurer, as defined in 39-71-116, or to the agent of a workers’ compensation insurer by the health care provider. The disclosure authorized by this subsection authorizes the physician or other health care provider to disclose or release only information relevant to the claimant’s condition. Health care information relevant to the claimant’s condition may *283 include past history of the complaints of or the treatment of a condition that is similar to that presented in the claim, conditions for which benefits are subsequently claimed, other conditions related to the same body part, or conditions that may affect recovery. A release of information related to workers’ compensation must be consistent with the provisions of this subsection. Authorization under this section is effective only as long as the claimant is claiming benefits. This subsection may not be construed to restrict the scope of discovery or disclosure of health care information as allowed under the Montana Rules of Civil Procedure, by the workers’ compensation court, or as otherwise provided by law.
Finally, § 39-71-604(2), MCA, contains a provision identical to § 50-16-527(4), MCA, set forth above.
¶16 Simms argues that the above statutes do not excuse Schabacker’s conduct. He maintains that Schabacker’s letter to Martello in response to his receipt of the videos was atypical of the parties’ previous correspondence and is actionable because Martello’s July2,2007 letter revealed to Schabacker that Martello was acting in his capacity as a “Special Assistant Attorney General.” The text of Martello’s letter — which was on State Fund stationery — makes no reference to the SAAG capacity or to any criminal investigation; the quoted words simply appear under Martello’s signature. Simms maintains that in light of this “disclosure” on the Martello letter, Schabacker knew he was assisting in a criminal investigation rather than simply providing information pertaining to Simms’ medical condition, and that Schabacker should be held liable for providing medical opinions to a law enforcement agent in a criminal investigation that are adverse to his own patient.
¶17 In response, Schabacker points out that he had responded to multiple Montana State Fund communications over the years, all arriving on the same letterhead, regarding Simms’ progress and treatment throughout the time that he acted as Simms’ treating physician, and that this correspondence was exchanged as authorized by the statutes quoted above. These letters were copied to Simms, and Simms never objected to the communications. Schabacker submitted a sworn affidavit to the effect that when he drafted his response to Martello’s initial letter containing the videos, he had no knowledge that Martello was associated with law enforcement in any manner. He stated he did not consider Martello’s SAAG title to be a factor when responding to Martello’s letter, and that he did not know that a criminal investigation of Simms was underway and never intended to *284 assist in any such investigation.
¶18 In entering summary judgment, the District Court concluded that Schabacker and the State Fund were authorized to conduct ex parte communications with each other, and that the communications properly centered on healthcare information relevant to Simms’ condition for which he was claiming benefits. The court found that the Notice of Privacy Policy executed by Simms, when read in conjunction with authorizing statutes (§§ 50-16-805(1), 50-16-527, and 39-71-604, MCA), expressly permitted Schabacker to release relevant healthcare information regarding Simms to State Fund. While the court found it “troubling” that State Fund sent the videos to the doctor in the first place, it observed that the issue before the court was whether Schabackeris response to the videos breached the physician-client privilege and Simms’ right to the privacy of his medical information. The court concluded that in light of the executed Notice of Privacy Policy and the statutes authorizing such communications, Schabacker did not breach the privilege, and further that the doctor had established that he had no knowledge that he was assisting a law enforcement agency when he wrote the letter to Martello. We find no error in these conclusions.
¶19 The sole basis for Simms’ complaint against Schabacker is that because of the reference to Martello’s SAAG status in one letter, Schabacker knew he was participating in a criminal investigation against his own patient when he informed Martello of his reaction to the videos. Schabacker flatly denied in an affidavit and sworn testimony that he knew Martello was acting in a law enforcement capacity, and the District Court relied upon these denials to conclude that the doctor had no knowledge he was assisting a law enforcement agency. However, we conclude that even if the SAAG status noted at the bottom of MarteEo’s letter could arguably raise a question of fact about what the doctor knew, summary judgment was stiE appropriate in fight of the provision in the Notice of Privacy Polity that NRPRC “may disclose any information we coEect... [which] may include ... disclosures related to... fraud investigations.” See Opinion, ¶ 4. Thus, even if Schabacker suspected that a fraud investigation had commenced, his disclosure would nonetheless be protected by virtue of the language of the Notice of Privacy Polity which was signed by Simms. Notably, Simms has not argued that he was coerced into signing the Notice or that he did not understand its contents.
¶20 The Dissent maintains that we err in omitting § 50-16-805(2), MCA, from our discussion. It posits that this statute, which addresses those situations in which healthcare providers may disclose healthcare *285 information for law enforcement purposes, is in essence an absolute liability statute in that it does not require a healthcare provider to know that he is making a disclosure to law enforcement authorities in order for a violation of the statute to be established. We reject this argument for three reasons.
¶21 First, Simms has consistently argued that Schabacker knowingly made prohibited disclosures to Martello as SAAG in violation of the statute; thus, the position interposed by the Dissent is contrary to Simms’ primary contention on appeal.
¶22 Second, we disagree with the proposition that the statute is an absolute liability statute. The Legislature is well aware of how to craft a statute so as to make clear that it intends the statute to impose absolute liability for the conduct described. For example, § 61-8-401(7), MCA, which addresses the offense of driving under the influence of alcohol or drugs, provides: “Absolute liability as provided in 45-2-104 [limiting the circumstances under which absolute liability may be imposed] will be imposed for a violation of this section.” The intent to impose absolute liability is expressly stated. State v. Parks, 2013 MT 280, ¶ 40, 372 Mont. 88, 310 P.3d 1088 (Cotter, J., concurring). Here, there is no language in the statute to indicate that absolute liability is intended.
¶23 Finally, the Dissent ignores the fact that the Notice ofPrivacy Policy signed by Simms authorizes healthcare providers to make disclosures “related to fraud investigations.” Nothing in § 50-16-805(2), MCA, limits or precludes actions taken in accordance with the provisions of such a document.
CONCLUSION
¶24 For the foregoing reasons, the decision of the District Court is affirmed.
CHIEF JUSTICE McGRATH, JUSTICES BAKER and McKINNON concur.