FILED

02/14/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0164

DA 16-0164

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 26

STATE OF MONTANA, JUDICIAL BRANCH,
OFFICE OF THE COURT ADMINISTRATOR,
and GEORGE W. HUSS,

      Plaintiffs and Appellees,

  v.

CHARLENE A. BERDAHL,

      Defendant, Counter-Claimant,
      Cross-Claimant, and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark Cause No. BDV 14-894
                    Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jory C. Ruggiero, Domenic A. Cossi, Western Justice Associates, PLLC,
                Bozeman, Montana

        For Appellees:

                John G. Crist, Crist, Krogh, Butler & Nord, LLC, Billings, Montana
                (for George W. Huss)

                W. Anderson Forsythe, Moulton Billingham, P.C., Billings, Montana

                Katherine Orr, Assistant Attorney General, Helena, Montana

        For Amicus Curiae, Montana Trial Lawyers Association:

                Michael G. Eiselein, Eiselein Law Firm, PLLC, Billings, Montana

Submitted on Briefs:  November 16, 2016

Decided:  February 14, 2017

Filed:

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1	Charlene A. Berdahl (Berdahl) appeals the declaratory judgment entered by the First Judicial District Court, Lewis and Clark County, holding that the State of Montana owed no duty to defend or indemnify George Huss (Huss) against claims filed by Berdahl, and had no obligation to pay the stipulated settlement and confessed judgment between Huss and Berdahl.  We affirm, and address the following issue:

*Did the District Court err by holding that the State bore no obligation to pay the stipulated settlement between Huss and Berdahl?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2	The facts found by the District Court for purposes of this declaratory action are as follows.  In 1991, Berdahl began working as a court reporter for the Sixteenth Judicial District Court, in Forsyth.  In November 2012, George Huss was elected as a district court judge in the Sixteenth Judicial District.  Huss oversaw Department Two of the District and Berdahl worked directly for Huss as his primary court reporter.  In this capacity, Berdahl worked closely with Huss and often traveled with him to locations within the District for official court business.

¶3	In February 2014, Berdahl filed a sexual harassment complaint against Huss with the Montana Human Rights Bureau (HRB).  Berdahl alleged that Huss, during work time, had made various declarations of romantic interest, love, and undying devotion to her, which Berdahl resisted.  Berdahl stated that Huss bought her gifts, offered to make her dinner while his wife was out of town, and expressed his desire to kiss and hug her.  Berdahl alleged that Huss retaliated against her in the workplace when she resisted his

3

overtures. Berdahl's detailed complaint set forth numerous further allegations about Huss's behavior, some of which was delineated by the District Court.

¶4 On February 24, 2014, Beth McLaughlin (McLaughlin), the State's Court Administrator, emailed Huss to advise that she had received Berdahl's human rights complaint, which had also named the State of Montana, and asked Huss to take no action until McLaughlin had obtained counsel for the judicial branch. In reply, Huss asked, "Will the State be providing me [with] counsel pursuant to [§] 2-9-305[,] MCA?" McLaughlin responded that she would not know until she received advice from counsel. Two days later, McLaughlin advised Huss by email that state counsel had been assigned for the HRB complaint, but that the assigned attorney was not immediately available due to scheduling conflicts.

¶5 On April 2, 2014, Huss's attorney, John Crist (Crist), wrote to McLaughlin requesting that the State "agree to defend and indemnify Judge George W. Huss" regarding Berdahl's HRB claims. Noting that Huss had previously contacted the State about the complaint, Crist explained that "this letter is intended to be a more formal notice as provided by statute. . . . [P]lease accept this letter as his formal tender of the defense of this action filed against him, and his request for indemnity as provided by Mont. Code Ann. § 2-9-305." On April 25, 2014, the Agency Legal Services Bureau, on behalf of the Court Administrator, wrote to Crist and affirmed that the State would underwrite the costs of Huss's defense, to be provided by Crist. The letter further explained that:

4

This tender of a defense is provided with a reservation of right not to provide payment for attorney services should it appear from the investigation by the Human Rights Bureau that Judge Huss was acting outside the course and scope of employment or if other elements of Mont. Code Ann. § 2-9-305(6) apply. In the case that any of these elements apply, Judge Huss will have to pay for his own defense.

Similarly the Court Administrator has not made a decision of whether it will provide indemnity with respect to the claims . . . but will do so at the completion of the HRB investigation and based upon the factors considered under Mont. Code Ann. § 2-9-305.

¶6 About four months later, on August 12, 2014, Crist again wrote to the State requesting that it "acknowledge its legal obligation to indemnify Judge Huss with respect to" the claims, and stating that "[t]he State does not need to await an investigator's report to make this determination." Crist's letter focused particularly on alleged actions taken by Huss to retaliate against Berdahl after she resisted his romantic overtures. Crist also requested that the State "meaningfully participate" in an HRB mediation on Berdahl's complaint, which had been scheduled for September 3, 2014. On August 26, 2014, the State responded to Crist, citing authority for the proposition that sexual harassment by a supervisor was not conduct within the scope of employment, and taking the position that Huss's alleged actions as stated in Berdahl's complaint "were not performed as part of Judge Huss' duties as a Montana District Court Judge. . . . As a result, the State concludes Judge Huss did not act in the course and scope of his employment and cannot be defended and indemnified by the State." Regarding Crist's request that the State participate in the scheduled mediation, the State's counsel stated:

[T]he State does not intend to participate in or consent to any settlement of this matter. If Judge Huss agrees to a monetary settlement[,] . . . it is

5

without the consent of the State and Judge Huss cannot be subsequently indemnified for any such settlement. Mont. Code Ann. § 2-9-305(6)(c).

¶7 Berdahl and Huss mediated on September 3, 2014, and although they did not reach a settlement that day, they continued to negotiate and, on September 30, 2014, entered into a "Stipulation and Confession of Judgment Resulting from the State of Montana's Refusal to Defend and Indemnify." In this agreement, Huss confessed to judgment in Berdahl's favor in the amount of $744,371. He assigned his rights against the State to Berdahl and agreed to "cooperate in jointly requesting entry of this Judgment by any tribunal having jurisdiction." Berdahl agreed not to seek execution of the judgment against Huss.

¶8 The State became aware of the stipulated settlement when Berdahl sought collection of the judgment from the State. The State wrote to Crist, advising that, "[b]ased on George Huss' dispute regarding whether he is entitled to defense and indemnification, the State of Montana has concluded it should clarify its obligation to Huss, as provided in Mont. Code Ann. § 2-9-305(7)" and "has commenced a declaratory judgment action." The parties, including Berdahl, Huss, and the State, appeared before the HRB Hearing Officer and requested a stay of the administrative proceeding "while the Office of the Court Administrator institutes a declaratory judgment action in District Court, pursuant to Mont. Code Ann. § 2-9-305(7)," which the Hearing Officer ordered.

¶9 The State filed this action, seeking judicial declarations that Huss was not acting in the course and scope of his employment with regard to his actions toward Berdahl, that his actions constituted oppression, that he failed to cooperate with his defense, that the

6

State had no duty to defend or indemnify Huss against the claims, and that Huss had entered a settlement without the consent of the State, which was not enforceable against the State. Berdahl counterclaimed, seeking declarations that the State had breached its duty to defend, that the State was liable under principles of agency and respondeat superior, that the settlement was enforceable against the State, and that she was entitled to attorney fees and costs.

¶10 In a lengthy order, the District Court rejected Berdahl's request for a declaration that the State was responsible for the stipulated judgment entered by Berdahl and Huss, and further held that the State owed no duty to defend or indemnify Huss in the action. Regarding Berdahl's respondeat superior claim against the State, the District Court reasoned that Berdahl's "exclusive remedy is under the Montana Human Rights Act," and that she could not assert the claim in this declaratory action. The District Court dismissed the claim without prejudice to Berdahl pursuing her claim before the HRB. Berdahl appeals.[1]

**STANDARD OF REVIEW**

¶11 We review *de novo* a district court's decision to grant summary judgment, using criteria applied by the district court under M. R. Civ. P. 56. *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 8, 344 Mont. 1, 185 P.3d 1003 [hereinafter *Sports Shooting*] (citing *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 24, 339 Mont. 445, 171

---

[1] On October 1, 2014, HRB issued its Final Investigative Report, finding reasonable cause to believe that Huss was guilty of sexual harassment, but concluding that Berdahl's employer was not liable because it had a policy and procedure in place to address complaints of sexual discrimination, which was known to Berdahl, but she had failed to avail herself of this process.

7

P.3d). A district court properly grants a motion for summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Sports Shooting*, ¶ 8 (citing *Farmers Coop.*, ¶ 24). We review a district court's conclusions of law for correctness. *Shattuck v. Kalispell Reg'l Med. Ctr.*, 2011 MT 229, ¶ 8, 362 Mont. 100, 261 P.3d 1021 (citing *Gaston Eng'g & Surveying, P.C. v. Oakwood Props., LLC*, 2011 MT 44, ¶ 11, 359 Mont. 341, 249 P.3d 75).

## DISCUSSION

¶12 *Did the District Court err by holding that the State bore no obligation to pay the stipulated settlement between Huss and Berdahl?*

¶13 In her arguments seeking enforcement of the stipulated judgment, Berdahl extensively cites and argues common law principles governing the duty to defend in a commercial insurance setting. Application of these common law principles can require an insurer to be responsible, in certain circumstances, for a stipulated settlement entered by the parties. *See Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, 321 Mont. 99, 90 P.3d 381; *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, 376 Mont. 80, 330 P.3d 1139. Berdahl argues these principles govern here because "[t]he State actually is an insurer in this context." In response, the State argues there is no insurance contract, no insurance fund, and the State does not here act as an insurer. Further, because its obligations regarding defense and indemnity of Huss arise, not from the common law governing commercial insurers, but from the specific provisions of § 2-9-305, MCA, the State argues that these common law principles do not govern here.

8

¶14 The State is correct. "In this state there is no common law in any case where the law is declared by statute." Section 1-1-108, MCA; *see Woods v. State*, 2015 MT 8, ¶ 19, 378 Mont. 38, 340 P.3d 1254 ("Although the Woodses urge this Court to apply general common law principles of foreseeability, . . . the Legislature rejected this approach when it adopted § 27-1-1102, MCA."). As the District Court reasoned, "insurance rules are inapplicable. The statutory obligation is not commercial liability insurance, nor is it a contract of indemnity. But [Berdahl's argument] also fails on separate grounds because imposition of the insurance rules as urged by Berdahl would require the Court to abrogate the provisions of the statute." This matter is governed and resolved solely under the provisions of § 2-9-305, MCA.

¶15 Section 2-9-305, MCA, generally provides that "[i]t is the purpose of this section to provide for the immunization, defense, and indemnification of public officers and employees civilly sued for their actions taken within the course and scope of their employment," and also provides exceptions to that directive, as well as the process to be followed to make such determinations. Pertinent to this matter, the statute provides:

> (2) In any noncriminal action brought against any employee of a state, county, city, town, or other governmental entity for a negligent act, error, or omission . . . or other actionable conduct of the employee committed while acting within the course and scope of the employee's office or employment, the governmental entity employer, *except as provided in subsection (6), shall defend the action on behalf of the employee and indemnify the employee.*
> (3) Upon receiving service of a summons and complaint in a noncriminal action against an employee, the employee shall give written notice to the employee's supervisor requesting that a defense to the action be provided by the governmental entity employer. If the employee is an elected state official or other employee who does not have a supervisor, the

9

employee shall give notice of the action to the legal officer or agency of the government entity defending the entity in legal actions of that type. *Except as provided in subsection (6), the employer shall offer a defense to the action on behalf of the employee.* . . . The employer shall notify the employee, within 15 days after receipt of notice, whether a direct defense will be provided. . . . *Except as provided in subsection (6), the employer shall pay all expenses relating to the retained defense and pay any judgment for damages entered in the action that may be otherwise payable under this section.*

(4) In any noncriminal action in which a governmental entity is a party defendant, the employee must be indemnified by the employer for any money judgments or legal expenses, including attorney fees either incurred by the employee or awarded to the claimant, or both, to which the employee may be subject as a result of the suit *unless the employee's conduct falls within the exclusions provided in subsection (6).*

(5) . . . In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, *unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).*

(6) In a noncriminal action in which a governmental entity employee is a party defendant, *the employee may not be defended or indemnified by the employer for any money judgments or legal expenses, including attorney fees, to which the employee may be subject as a result of the suit if a judicial determination is made that*:

(a) the conduct upon which the claim is based constitutes oppression, fraud, or malice or for any other reason [that] does not arise out of the course and scope of the employee's employment;

(b) the conduct of the employee constitutes a criminal offense as defined in Title 45 chapters 4 through 7;

(c) *the employee compromised or settled the claim without the consent of the government entity or employer*; or

(d) the employee failed or refused to cooperate in the defense of the case.

(7) *If a judicial determination has not been made applying the exclusions provided in subsection (6), the governmental entity employer may determine whether those exclusions apply.* However, if there is a dispute as to whether the exclusions of subsection (6) apply and the governmental entity employer concludes that it should clarify its obligation to the employee arising under this section by commencing a declaratory

judgment action or other legal action, the employer is obligated to provide a defense of the employee until a final judgment is rendered in that action holding that the employer did not have an obligation to defend the employee.

Section 2-9-305(2)-(7), MCA (emphasis added).

¶16    The statute states, unambiguously and repeatedly, as indicated by the italicized text above, that defense and indemnification of a government employee will *not* be provided if any of the exclusions in subsection (6) of the statute apply, including subsection (6)(c), which excludes any obligation when "the employee compromised or settled the claim without the consent of the governmental entity or employer." Here, as the District Court found and no one contests, Huss compromised and settled Berdahl's claims against him without the consent of the State, in direct violation of subsection (6)(c), thereby voiding or eliminating the State's obligation to defend and indemnify Huss under the statute. Obviously, if there is no duty to defend or indemnify an employee, then there can be no obligation to pay the employee's stipulated settlement.

¶17    Berdahl seeks to avoid this result by arguing that the State violated the statute in ways that should foreclose the application of subsection (6)(c), or estop the State from invoking the provision. Citing the State's ultimate determination that it did not owe a duty to defend Huss, and its refusal to participate in the mediation process, Berdahl argues that the State breached its statutory duty to defend "long before" Huss entered the stipulated judgment, and therefore "§ 2-9-305(6), MCA, cannot be invoked to justify or exonerate the State's original, improper refusal to defend."

11

¶18 However, the State's "original" determination was not a refusal to defend. Rather, the State provided a defense to Huss in the HRB administrative proceeding under a reservation of rights so that the matter could be investigated. Following Huss's request on August 12, 2014, that the State make an indemnification decision without waiting for HRB's final investigative report, the State advised Huss on August 26, 2014, that it had determined that Huss had not acted within the course and scope of his employment and that no duty to defend or indemnify was owed to Huss. Thus, the State provided a defense to Huss until shortly before commencement of the mediation process that ultimately led to the stipulated settlement. The State also advised Huss beforehand that it would not be responsible for any such settlement, citing subsection (6)(c).[2] However, despite this admonition, Huss pursued a settlement instead of seeking a judicial declaration of the State's obligation to defend and indemnify. We conclude that the State's actions here did not negate the application of subsection (6)(c) or estop the State from invoking it.

¶19 Berdahl also argues that the State violated subsection (7) of the statute by making its own determination that the exclusions in subsection (6) applied to Huss. She argues that the District Court erred by giving to state administrators "the power to render legally binding, judicial coverage determinations." However, as quoted above, subsection (7) plainly states that "[i]f a judicial determination has not been made applying the

---

[2] In accordance with § 2-9-305(7), MCA, when the State decided to pursue a declaratory action, it again assumed Huss's defense costs in the HRB action during the pendency of the action. That matter remains stayed.

12

exclusions provided in subsection (6), the governmental entity employer may determine whether those exclusions apply." Subsection (7) further provides that if there is a dispute over the issue, the government employer may commence an action to obtain a judicial determination if it "concludes that it should clarify its obligation to the employee." The discretionary language employed here authorizes the government employer to either commence an action or to stand by its decision and allow other parties to initiate such an action, if they so choose.

¶20 Berdahl briefly argues that § 2-9-305(6)(c), MCA, contradicts § 28-11-316, MCA, which makes an indemnitor who "neglects to defend the person indemnified" liable for a recovery against the indemnitee. However, § 2-9-305, MCA, is the specific provision governing indemnification of government employees and controls over other, general provisions. "It is a maxim of statutory interpretation that a general statute will yield to a specific statute." *Simms v. Schabacker*, 2014 MT 328, ¶ 29, 377 Mont. 278, 339 P.3d 832 (citing § 1-2-102, MCA; *State v. Plouffe*, 2014 MT 183, ¶ 27, 375 Mont. 429, 329 P.3d 1255).

¶21 We conclude the District Court did not err in holding that the stipulated judgment was not enforceable against the State.

¶22 Berdahl also challenges the District Court's holding that the discrimination allegations against Huss did not come within the course and scope of his employment. However, as correctly noted by the State, "the fact that Judge Huss entered into a settlement agreement without the consent of the State itself requires the conclusion that

13

the State is relieved of any obligation to defend or indemni[fy], regardless of whether the claim arose from acts within the course and scope of employment." Having concluded that § 2-9-305(6)(c), MCA, acts here to void the State's duty to defend and indemnify Huss, we need not address the course and scope issue to resolve the matter before us.

## CONCLUSION

¶23 We affirm the District Court's determination that the State was not obligated to pay the stipulated judgment entered by Berdahl and Huss. Consequently, it is unnecessary to address the issue of whether Huss's actions came within the course and scope of his employment. Finally, as the District Court correctly noted, Berdahl may pursue relief before the HRB, where the administrative proceeding on her complaint is currently stayed.


/S/ JIM RICE


We concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA


14