FILED

05/30/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0595

DA 16-0595

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 125

DRAGGIN' Y CATTLE COMPANY, INC., and
ROGER and CARRIE PETERS,

      Plaintiffs and Appellants,

   v.

JUNKERMIER, CLARK, CAMPANELLA,
STEVENS, P.C.,

      Defendant,

NEW YORK MARINE and GENERAL INSURANCE
COMPANY,

      Intervenor and Appellee.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
                         In and For the County of Gallatin, Cause No. DV 11-87AX
                         Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Timothy B. Strauch, Strauch Law Firm, PLLC, Missoula, Montana
            Donald L. Harris, Harris, Gannett & Varela, PLLC, Billings, Montana
            (*Counsel for Draggin' Y Cattle Co. and Peters*)

            Thomas Marra, Marra, Evenson & Bell, PC, Great Falls, Montana
            (*Counsel for Junkermier, Clark, Campanella, Stevens, P.C.*)

      For Appellee:

            Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, PC, Great Falls,
            Montana
            (*Counsel for New York Marine and Gen. Ins. Co.*)

                             Submitted on Briefs: April 5, 2017
                                  Decided: May 30, 2017

Filed:

                                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Roger and Carrie Peters and Draggin' Y Cattle Company, Inc., (collectively Peters) entered into a stipulated settlement with Junkermier, Clark, Campanella, Stevens, P.C., and Larry Addink (collectively Junkermier).  The presiding judge—Judge George Huss— determined that the stipulated settlement was reasonable and entered judgment against Junkermier's insurer, New York Marine and General Insurance Company.  New York Marine appealed and questioned Judge Huss's impartiality.

¶2      We concluded in that appeal that Judge Huss should have disclosed a potential conflict of interest.  We referred the case to the District Court to determine whether Judge Huss should have been disqualified for cause.  The District Court concluded that Judge Huss was required to recuse himself and should have been disqualified.  The District Court also vacated all orders that Judge Huss issued after he should have been disqualified.  Peters contend that the District Court erred in ruling that Judge Huss should have been disqualified and in vacating Judge Huss's orders.

¶3      We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶4      This is the third time this matter has been before this Court.  *Draggin' Y Cattle Co. v. Addink*, 2016 MT 98, 383 Mont. 243, 371 P.3d 970 (hereafter *Draggin' Y II*); *Draggin' Y Cattle Co. v. Addink*, 2013 MT 319, 372 Mont. 334, 312 P.3d 451 (hereafter *Draggin' Y I*).  We restate the relevant facts briefly.

¶5      Peters sued Junkermier in January 2011 for damages related to tax services Junkermier performed for Peters.  Junkermier requested that New York Marine defend and

indemnify them against Peters's claims. New York Marine defended Junkermier subject to a reservation of rights throughout the suit. In the first appeal, we reversed a grant of summary judgment in Junkermier's favor and remanded. *Draggin' Y I*, ¶ 51. Judge Huss assumed jurisdiction of this underlying action following remand.

¶6 Peters and Junkermier entered into a settlement agreement and stipulation for entry of judgment without New York Marine's participation or authorization in November 2014. On December 5, 2014, New York Marine filed a motion to intervene and requested additional discovery and a stay of the scheduled reasonableness hearing. Ten days later, Judge Huss granted New York Marine's motion to intervene, denied its motions for additional discovery and to stay, and held the reasonableness hearing. New York Marine contested the stipulated settlement's reasonableness and denied liability for the settlement. Judge Huss concluded that the stipulated settlement was reasonable and entered judgment in the amount of $10,000,000 in Peters's favor. New York Marine appealed, and Peters cross-appealed.

¶7 For the first time on appeal, New York Marine asserted that Judge Huss had an apparent conflict of interest stemming from a sexual harassment complaint that his former court reporter filed against him. New York Marine alleged that Judge Huss had individually entered into a stipulated settlement without the participation or authorization of the Office of the Court Administrator (OCA), which acted as Judge Huss's insurer by paying for his defense under a reservation of rights. New York Marine alleged further that the OCA had filed a declaratory judgment action in which it contested the stipulated

3

settlement amount's reasonableness.[1] Judge Huss's potential conflict of interest, New York Marine contended, violated the Montana Code of Judicial Conduct and should have resulted in Judge Huss's disqualification.

¶8 We concluded that Rule 2.12, M. C. Jud. Cond., required that Judge Huss disclose his participation in his personal stipulated settlement to the parties because the circumstances "could potentially cause the judge's impartiality reasonably to be questioned." *Draggin' Y II*, ¶ 31. But we declined to determine whether Rule 2.12 required Judge Huss to disqualify himself because such a determination "requires findings of fact and conclusions of law following the presentation of evidence." *Draggin' Y II*, ¶ 31. We therefore "determine[d] that the appropriate course of action [was] to refer the disqualification issue to a district judge to hear the matter pursuant to § 3-1-805, MCA." *Draggin' Y II*, ¶ 31. In a subsequent order, this Court assigned the Honorable Russell C. Fagg to preside over the disqualification proceeding.

¶9 Upon referral, Judge Fagg set a disqualification hearing, at which Judge Huss testified. The court's ensuing order concluded that Judge Huss was required to recuse himself and should have been disqualified from presiding over the stipulated settlement. The District Court concluded further that the new judge assigned to the case would need to decide the issues raised by the parties after New York Marine intervened in the case. The

---

[1] We have since addressed the OCA's suit concerning Judge Huss's personal stipulated settlement. *State v. Berdahl*, 2017 MT 26, 386 Mont. 281, 389 P.3d 254. In *Berdahl*, we held that the stipulated settlement was not enforceable against the State because Judge Huss entered into the settlement without the State's consent in violation of Montana statute. *Berdahl*, ¶ 23.

4

court's order therefore had the effect of vacating all of Judge Huss's orders after New York Marine intervened.

## STANDARD OF REVIEW

¶10     We review judicial disqualification questions de novo. *Draggin' Y II*, ¶ 10. Our inquiry requires an objective examination of the circumstances surrounding potential judicial disqualification and an accurate interpretation of the Montana Code of Judicial Conduct. *Draggin' Y II*, ¶ 10.

## DISCUSSION

¶11     *1. Whether the District Court correctly concluded that Judge Huss was required to recuse himself and should have been disqualified.*

¶12     The District Court issued findings of fact regarding both the Peters's case and the suit against Judge Huss. The court's findings related to the Peters's case focused on the time period following the Peters/Junkermier stipulated settlement. The court also made findings related to the suit against Judge Huss regarding the circumstances and procedural posture of that case and what Judge Huss agreed to under his stipulated settlement. Finally, the court's findings addressed the overlap in the two stipulated settlements' timelines. The court found that

> Judge Huss did not disclose to the litigants in this case the existence of his confessed judgment in favor of [the court reporter], the fact that he had contractually agreed to cooperate in her execution of that judgment against the OCA, or the fact the OCA had challenged the reasonableness of Judge Huss' stipulated judgment.

¶13     The court then reviewed the Montana Code of Judicial Conduct, particularly Rule 2.12(A). Based on its interpretation of the Code and "the above facts," the court determined

5

that Judge Huss's "impartiality might reasonably have been questioned at the time he presided over and evaluated the stipulated settlement in this litigation, including the December 15, 2014, reasonableness hearing and [New York Marine's] request for discovery regarding the settlement's reasonableness." In making this determination, the court highlighted our observation in *Draggin' Y II* that "Judge Huss presided over a hearing in which an insurer questioned the reasonableness of a stipulated settlement while the reasonableness of his own personal stipulated settlement was being questioned by his insurer." *Draggin' Y II*, ¶ 30. The District Court concluded that under "Rule 2.12(A) and Montana law, Judge Huss was required to recuse himself and should have been disqualified from presiding over the settlement executed in this case."

¶14 Peters argue on appeal that the District Court erred by concluding that Rule 2.12(A) provided grounds for Judge Huss's disqualification. Peters contend that the evidence does not reasonably call Judge Huss's impartiality into question. In support of this position, Peters assert that the OCA's declaratory judgment action did not affect Judge Huss because he never had any personal or financial interest in the OCA lawsuit, the OCA did not pursue its allegation that the stipulated settlement was unreasonable, and Judge Huss's interests in the case against him had been resolved by the time New York Marine had moved to intervene in the present case. Relying on *Reichert v. State*, 2012 MT 111, 365 Mont. 92, 278 P.3d 455, Peters argue that Judge Huss's interest was "too remote, too speculative and too contingent" to warrant disqualification under Rule 2.12. Finally, Peters assert that the District Court relied too heavily on our decision in *Draggin' Y II* to conclude that Judge Huss should have disqualified himself, instead of independently reviewing the evidence.

6

¶15     Peters rightly point out that we "decline[d] to address whether Rule 2.12 required Judge Huss to disqualify himself." *Draggin' Y II*, ¶ 23.  Instead, we "address[ed] whether Judge Huss initially should have disclosed the circumstances to the parties." *Draggin' Y II*, ¶ 23.  Our comment that "Judge Huss presided over a hearing in which an insurer questioned the reasonableness of a stipulated settlement while the reasonableness of his own personal stipulated settlement was being questioned by his insurer" supported our conclusion that "Judge Huss was required to disclose" to the parties his own recent stipulated settlement.  *Draggin' Y II*, ¶ 30.  The District Court considered this statement, but based its findings of fact and conclusions of law on the evidence introduced following our referral in *Draggin' Y II*.  The court made specific findings regarding the Peters's case, the case against Judge Huss, and the overlap between the two cases.  The court entered its conclusions of law on the basis of these findings of fact and its interpretation of Rule 2.12.  It entered its order on the basis of our instruction to determine whether disqualification was warranted.  The District Court did not rely improperly on our decision in *Draggin' Y II* in determining that Judge Huss should have disqualified himself.

¶16     Both parties rely on *Reichert* in arguing their respective positions.  In *Reichert*, we addressed whether Rule 2.12 required four justices to recuse themselves from deciding an issue involving the election of Supreme Court justices.  *Reichert*, ¶ 42.  Given the nature of the claims, our analysis focused on Rule 2.12(A)(2)(c).  *Reichert*, ¶¶ 41-51.  That subsection is one of a number of specific circumstances Rule 2.12 enumerates that might lead to reasonable questions about a judge's impartiality.  M. C. Jud. Cond., Rule 2.12(A).  It provides that a judge's impartiality might reasonably be questioned when "[t]he judge

7

knows that the judge . . . has more than a de minimis interest that could be substantially affected by the proceeding." M. C. Jud. Cond., Rule 2.12(A)(2)(c). *Reichert* thus focused on whether the justices knew they had "more than a de minimis interest that could be *substantially* affected by the proceeding." *Reichert*, ¶ 45 (emphasis in original). In making this determination, we relied on cases from other jurisdictions that "reached similar conclusions about the necessary degree of interest" a judge must have in a proceeding to support disqualification. *Reichert*, ¶ 46. Disqualification under Rule 2.12(A), however, is "not limited" to only those circumstances articulated in Rule 2.12(A)(1)-(5). M. C. Jud. Cond., Rule 2.12(A). Rather, the "ultimate question" under a Rule 2.12 analysis is whether the judge's "impartiality 'might reasonably be questioned.'" *Reichert*, ¶ 50 (quoting M. C. Jud. Cond., Rule 2.12(A)).

¶17 In *Reichert*, we considered the United States Supreme Court's due process analysis in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252 (2009), and observed that, "[b]ecause the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort" to constitutional due process considerations. *Reichert*, ¶ 31 (citation and internal quotations omitted). The applicable standards of judicial conduct resolve the question presented in this case. Here, our focus is not whether Judge Huss had a personal "interest that could be substantially affected by the proceeding," but instead whether his participation in his personal stipulated settlement could reasonably raise concerns about his impartiality in the instant proceedings. *Reichert* turned on the application of Rule 2.12(A)(2)(c), under which we concluded that "any biasing influence is too remote, too speculative, and too contingent

8

to mandate recusal." *Reichert*, ¶ 45. This case involves the overarching principle of impartiality contained in Rule 2.12(A).

¶18 Rule 2.12 governs judicial disqualification under the Code. *Draggin' Y II*, ¶ 18; *State v. Dunsmore*, 2015 MT 108, ¶ 13, 378 Mont. 514, 347 P.3d 1220; *Reichert*, ¶¶ 41-42. It provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." M. C. Jud. Cond., Rule 2.12(A). The comments to Rule 2.12 reiterate that "a judge is disqualified whenever the judge's impartiality might reasonably be questioned." M. C. Jud. Cond., Rule 2.12 cmt. [1]. The Code defines "impartiality" as an "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." M. C. Jud. Cond., Terminology, "Impartiality."

¶19 Determining whether a party might reasonably question a judge's impartiality requires an examination of the nature of the judge's interest in the issues before the judge. M. C. Jud. Cond., Rule 2.12; M. C. Jud. Cond., Terminology, "Impartiality." By definition, an inquiry into whether a judge can remain impartial given the judge's interest in a particular issue requires an examination of how that interest may affect the judge's objectivity. M. C. Jud. Cond., Terminology, "Impartiality"; *see Draggin' Y II*, ¶¶ 29-30 (concluding that although a judge's average personal experiences shape the judge's perspective, such experiences do not "necessarily preclude a judge from maintaining an 'open mind in considering issues that may come before a judge[;]'" therefore, such

9

experiences "do not generally lead to reasonable questions about the judge's impartiality and subsequent disqualification under Rule 2.12").

¶20　We are mindful that "[a]n independent, fair, and impartial judiciary is indispensable to our system of justice." M. C. Jud. Cond., Preamble [1]. We are mindful also that the Code cautions against "[u]nwarranted disqualification" because "[a]lthough there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts." *Draggin' Y II*, ¶ 29 (quoting M. C. Jud. Cond., Rule 2.1 cmt. [1]); *Reichert*, ¶ 49 (quoting M. C. Jud. Cond., Rule 2.1 cmt. [1]).

¶21　As the District Court observed, the procedural posture and circumstances surrounding the stipulated settlement in the Peters's case are strikingly similar to those surrounding Judge Huss's personal stipulated settlement. Peters and Junkermier entered into their stipulated settlement without New York Marine's participation or authorization on November 13, 2014. Under the stipulated settlement, Junkermier confessed to a judgment of $10,000,000; it assigned any rights it may have had against New York Marine to Peters; and it agreed to cooperate with Peters in executing the stipulated settlement against New York Marine. Peters agreed under the stipulated settlement not to execute the judgment against Junkermier. New York Marine thereafter intervened, denied liability for the settlement, and contested the stipulated settlement's reasonableness. Judge Huss held the reasonableness hearing on December 15, 2014, and he issued the order concluding that Peter's stipulated settlement was reasonable on March 5, 2015.

¶22     The case against Judge Huss began in February 2014 when his court reporter filed a sexual harassment complaint against him. Similar to Junkermier, Judge Huss requested that his "insurer"—the OCA—defend and indemnify him against those claims. The OCA paid for Judge Huss's defense, subject to a reservation of rights, until it concluded that it was not obligated to do so given the nature of the allegations against him. One month before Peters and Junkermier entered into their stipulated settlement, Judge Huss and the court reporter entered into a "Stipulation and Confession of Judgment Resulting From the State of Montana's Refusal to Defend and Indemnify." Judge Huss entered into the stipulated settlement without the OCA's participation or authorization. Under the stipulated settlement, Judge Huss confessed to a judgment of $744,371; he agreed to cooperate in executing the judgment against the OCA; he assigned his rights against the OCA to the court reporter; and the court reporter agreed not to execute the judgment against Judge Huss in his personal capacity. One month before the reasonableness hearing in the present case, the OCA filed an action seeking a judicial declaration that it was not responsible for Judge Huss's stipulated settlement. In its complaint, the OCA contested the stipulated settlement's reasonableness and denied any liability for the settlement. Two weeks after presiding over the reasonableness hearing in the present case, Judge Huss filed an answer to the OCA's complaint in which he asserted that his own stipulated settlement was reasonable.

¶23     At the disqualification hearing before Judge Fagg, Judge Huss acknowledged that the OCA challenged his stipulated settlement, in part, on the ground that the settlement was unreasonable. He testified that he had denied that the settlement was unreasonable and that

11

the OCA continued to question the settlement's reasonableness until at least February 2015. He agreed that he had bound himself under the stipulated settlement to cooperate in obtaining a judgment against the OCA. He agreed also that the settlement allowed the court reporter to continue her sexual harassment claims against him if he breached his duty to cooperate and that he could be exposed to personal liability. Finally, Judge Huss testified that he remained a party in the OCA's suit through at least February 2015. Judge Huss did not disclose any information related to the claims against him or his personal stipulated settlement to the parties here.

¶24 Peters's claims that Judge Huss's interests in the case against him were resolved by the time New York Marine intervened in the present case are belied by the fact that Judge Huss filed his answer to the OCA's complaint after New York Marine moved to intervene. Judge Huss's testimony at the disqualification hearing contradicts further Peters's assertion that Judge Huss did not have any personal or financial interest in the OCA lawsuit. Judge Huss testified that he had a duty to cooperate in obtaining a judgment against the OCA; that if he breached that duty, the sexual harassment claims against him could resume; that resuming the claims would expose him to personal liability; and that he remained involved in the OCA's action through at least February 2015. The fact that the OCA ultimately did not pursue its allegation that the stipulated settlement was unreasonable does not change the fact that the OCA continued to question the settlement's reasonableness while Judge Huss considered the reasonableness of Peters's and Junkermier's stipulated settlement. Judge Huss's ruling came on the heels of filing his answer denying that his settlement was unreasonable, following the reasonableness hearing here.

¶25    Our "objective examination of the circumstances surrounding [Judge Huss's] potential judicial disqualification" confirms the District Court's ruling that Judge Huss's impartiality reasonably could be questioned. *Draggin' Y II*, ¶ 10. Judge Huss continued to have a present and immediate interest in his own personal stipulated settlement after New York Marine intervened in the present case. The nature of Judge Huss's interest in his personal stipulated settlement raises reasonable questions regarding his "absence of bias or prejudice in favor of, or against, particular . . . classes of parties"—e.g., parties arguing for, or against, the reasonableness of stipulated settlements reached while their insurer's liability for defense and indemnity remains unsettled. M. C. Jud. Cond., Terminology, "Impartiality." The circumstances surrounding Judge Huss's personal stipulated settlement, and the related litigation then pending, also raise reasonable questions about his ability to maintain "an open mind in considering" the reasonableness of the stipulated settlement at issue here. M. C. Jud. Cond., Terminology, "Impartiality." Accordingly, we do not agree with Peters that Judge Huss's interest was "too remote, too speculative, and too contingent" to warrant disqualification under Rule 2.12.

¶26    Based on the District Court's finding of fact, we agree with its conclusion that Judge Huss's impartiality in deciding the stipulated settlement's reasonableness "might reasonably be questioned." The District Court correctly held that Judge Huss was required to disqualify himself pursuant to Rule 2.12(A).

¶27    *2. Whether the District Court erred in vacating Judge Huss's orders issued after he should have disqualified himself.*

13

¶28 The District Court determined that the "new judge assigned to this case will need to decide pending discovery issues, the stipulated judgment's reasonableness, [New York Marine's] motion to dismiss Peters' cross-claims, and any other issues which arise." The District Court's order thus had the effect of vacating Judge Huss's orders denying New York Marine's motions for discovery and for a stay, his order determining that the settlement was reasonable, and the entry of judgment against New York Marine.

¶29 Peters argue that the District Court erred in vacating Judge Huss's orders given that the court did not find personal bias or prejudice. Peters first point out that we referred the disqualification issue to the District Court to hear the matter pursuant to § 3-1-805, MCA. That statute, Peters assert, provides that judicial disqualification may occur "only upon proof of 'personal bias or prejudice.'" (Quoting § 3-1-805(1), MCA). Peters thus claim that the "purpose for remanding this case for a hearing under M.C.A. § 3-1-805(1) was to determine if Judge Huss had demonstrated actual bias or prejudice against [New York Marine]." In further support of their contention, Peters allege that this Court's caselaw and M. R. Civ. P. 61 prohibited the District Court from vacating Judge Huss's decisions absent a showing of personal bias or of prejudice to New York Marine's substantial rights.

¶30 Peters argue also that Rule 2.12(A) does not provide grounds for vacating a judge's decisions. Peters contend that New York Marine did not assert that Judge Huss should be disqualified pursuant to Rule 2.12(A)(1), which requires personal bias or prejudice. Rather, Peters assert, New York Marine claimed that Judge Huss should be disqualified under Rule 2.12(A) because there were reasonable questions regarding his impartiality. Peters claim, "A finding that Judge Huss's impartiality might reasonably have been

14

questioned under Rule 2.12(A) would be legally insufficient to vacate his decisions."  In fact, Peters assert, the Code expressly prohibits using it as a "basis for litigants to seek to change a judge's decision."  (Quoting M. C. Jud. Cond., Scope [1]).

¶31     Peters misinterpret our rationale in *Draggin' Y II* for referring the matter pursuant to § 3-1-805, MCA.  The statute "sets forth a procedure which must be followed when a party believes the presiding judge cannot be fair and impartial in the proceeding."  *In re Guardianship & Conservatorship of A.M.M.*, 2016 MT 213, ¶ 21, 384 Mont. 413, 380 P.3d 736; *see Draggin' Y II*, ¶ 22 ("A party also may seek disqualification by invoking the procedures of § 3-1-805, MCA.").  The ordinary procedure requires a party to "file an affidavit alleging facts showing personal bias or prejudice of the presiding judge."  Section 3-1-805(1), MCA.  If the allegation of bias is made against a district court judge, "the matter shall be referred to the Montana Supreme Court."  Section 3-1-805(1), MCA.  If the affidavit complies with a number of requirements articulated in the statute, "the Chief Justice shall assign a district judge to hear the matter."  Section 3-1-805(1), MCA.

¶32     Here, New York Marine alleged on appeal in *Draggin' Y II* that Judge Huss should have disqualified himself under Rule 2.12 because there were reasonable questions regarding his impartiality.  *Draggin' Y II*, ¶ 12.  We declined "to address whether Rule 2.12 required Judge Huss to disqualify himself."  *Draggin' Y II*, ¶ 23.  We concluded that determining whether Judge Huss should have been disqualified "require[d] findings of fact and conclusions of law following the presentation of evidence."  *Draggin' Y II*, ¶ 31.  We therefore determined that "the appropriate course of action [was] to refer the

15

disqualification issue to a district judge to hear the matter pursuant to § 3-1-805, MCA." *Draggin' Y II*, ¶ 31.

¶33 The circumstances are unique and dictated what we determined to be "the appropriate course of action" in light of the assertions New York Marine made on appeal. *Draggin' Y II*, ¶ 31. New York Marine alleged facts raising serious questions about Judge Huss's impartiality, invoking the possibility of "personal bias or prejudice of the presiding [district court] judge." Section 3-1-805(1), MCA. Because the matter already was before this Court on appeal, we invoked the statute to afford a fact-finding process. *Draggin' Y II*, ¶ 31. In accordance with our Opinion, the Chief Justice referred the disqualification issue to the District Court "to hear the matter pursuant to § 3-1-805, MCA." *Draggin' Y II*, ¶ 31.

¶34 We observed in *Draggin' Y II* that "Rule 2.12 of the Montana Code of Judicial Conduct and §§ 3-1-803, and -805, MCA, governs [sic] judicial disqualification." *Draggin' Y II*, ¶ 18 (citing *Dunsmore*, ¶ 12; *Reichert*, ¶¶ 41-51). New York Marine's allegations—and the majority of our analysis in *Draggin' Y II*—focused on Rule 2.12.

¶35 The Code establishes rules and standards meant to ensure that parties have their cases decided by an impartial judge. *E.g.*, M. C. Jud. Cond., Rule 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."); M. C. Jud. Cond., Rule 2.2 ("A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."). As such, Rule 2.12 requires that a judge disqualify himself or herself whenever a party might reasonably

16

question the judge's impartiality—i.e. the judge's "absence of bias or prejudice." M. C. Jud. Cond., Rule 2.12(A); M. C. Jud. Cond., Terminology, "Impartiality." The Rule requires no separate showing of actual bias or prejudice. Reasonable questions regarding a judge's ability to remain impartial inherently raise questions about the party's right to a fair tribunal. Once it is determined that a judge's impartiality reasonably has been placed in question, it would be impossible to assess whether the judge's decision might have been the same had the judge not possessed the disqualifying interest. Prejudice is determined by the existence *vel non* of the interest. We are unpersuaded by Peters's arguments to the contrary.

¶36 Because disqualification proceedings are premised upon a litigant's constitutional right to a fair and impartial tribunal, we are unpersuaded by Peters's contention that a violation of the Code cannot be the basis for vacating a judge's decision. The Code cautions that it is not "intended to be the basis for litigants to seek to change a judge's decision." M. C. Jud. Cond., Scope [1]. The Code does not, however, expressly prohibit a party from invoking its protections to vacate a judge's orders when the Code requires disqualification. In fact, we have reversed judges' orders based on our conclusion that a judge should have been disqualified under Rule 2.12. *Bullman v. State*, 2014 MT 78, ¶ 17, 374 Mont. 323, 321 P.3d 121 (reversing a district court's denial of a postconviction relief petition because a judge "was required to disqualify himself" under Rule 2.12); *In re B.W.S.*, 2014 MT 198, ¶¶ 16-19, 376 Mont. 43, 330 P.3d 467 (reversing a termination of parental rights order because the judge "was required to disqualify himself" under Rule 2.12).

¶37 As we held in *Draggin' Y II*, Rule 2.12 "undoubtedly requires judges to disqualify themselves if a party might reasonably question their impartiality." *Draggin' Y II*, ¶ 25. The "judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." M. C. Jud. Cond., Rule 2.12 cmt. [2]. In other words, Rule 2.12 mandates that a judge cannot proceed in a case when disqualification is required under the Rule. Upholding the orders of a judge who should not have heard or decided the matter in the first place is directly contrary to the black-letter standards Rule 2.12 articulates.

¶38 Upholding such an order also would run counter to the Code's Canons, which "provide important guidance in interpreting the Rules." M. C. Jud. Cond., Scope [2]. Canon 1 provides that "[a] judge shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." M. C. Jud. Cond., Canon 1. Allowing a judge's order to stand when the judge should have been disqualified because his impartiality might reasonably have been questioned does not "uphold and promote the independence, integrity, and impartiality of the judiciary." M. C. Jud. Cond., Canon 1.

¶39 We based our holding in *Draggin' Y II* that "a judge should disclose information that is relevant to a possible motion for disqualification" under Rule 2.12, in part, on our determination that disclosure "advances one of the Code's fundamental purposes— promoting confidence in the judiciary." *Draggin' Y II*, ¶ 25. Vacating the orders of a judge whose impartiality reasonably has been questioned similarly promotes confidence in the judiciary. Analogously, we have accepted supervisory control to decide a substitution of

18

judge question under § 3-1-804, MCA, in part because allowing the matter to proceed "may cause uncertainty as to the validity of the District Court judge's involvement and decisions in this matter." *Goldman Sachs Group, Inc. v. Mont. Second Judicial District Ct.*, 2002 MT 83, ¶ 8, 309 Mont. 289, 46 P.3d 606; *see also* M. R. App. P. 6(3)(k) (allowing immediate appeal in a civil case of an order granting or denying a motion for substitution of judge); M. R. App. P. 14(3)(c) (allowing supervisory control over a court that has granted or denied a motion for substitution of a judge in a criminal case).

¶40    We conclude that the District Court did not err in relying on Rule 2.12 to vacate Judge Huss's orders after he should have disqualified himself.

### CONCLUSION

¶41    We affirm the District Court's order concluding that Judge Huss should have disqualified himself and vacating the orders issued after he should have done so.  The case is remanded for further proceedings before a new judge.

/S/ BETH BAKER

We Concur:

/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE

19